No. 97-417

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 24

JAMES ANDERSON,

Defendant-Appellant,

v.

KEENAN ENGELKE, WILBER-ELLIS
COMPANY, and MINOT CASH SALES,

Plaintiffs-Respondents.

APPEAL FROM:   District Court of the Fifteenth Judicial District,
In and for the County of Roosevelt,
The Honorable David J. Cybulski, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Reid Peyton Chambers, Kyle T. Nayback, Sonosky, Chambers, Sachse &
Endreson, Washington, D.C.; Mary L. Zemyan, Wolf Point, Montana

For Respondent:

Laura Christoffersen, Christoffersen & Knierim, Wolf Point, Montana

Submitted on Briefs: December 18, 1997

Decided:   February 10, 1998
Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1   This is an appeal from the District Courtþs findings of fact, conclusions of law and
judgment issued March 24, 1997, in two separate causes of action filed in the Fifteenth
Judicial District Court, Roosevelt County.  The appeals of the courtþs decisions were

consolidated for purposes of our review.  We reverse and remand for further proceedings consistent with this opinion.

BACKGROUND

¶2    The two cases filed in District Court are procedurally and factually similar. Plaintiffs in Cause No. 96-DV-11026 are Wilber-Ellis Company and Minot Cash Sales. The plaintiff in Cause No. 96-DV-11027 is Keenan Engelke.  All of these parties are hereinafter referred to collectively as plaintiffs.  Plaintiffs are non-Indian residents of Roosevelt County; they obtained separate judgments against defendant James Anderson (Anderson) in the Fort Peck Tribal Court on July 9, 1996.  Anderson is an enrolled member of the Fort Peck Tribes living within the exterior boundaries of the Fort Peck Reservation.

¶3    Plaintiffs Wilbur-Ellis Company and Minot Cash Sales obtained a judgment for $5,460 plus costs for Andersonþs purchase of cattle feed supplement.  Plaintiff Engelke obtained a judgment in the amount of $6,543 plus costs for dirt work which Engelke performed in developing water sources in Andersonþs pastures.  The underlying transactions in each case arose within the Reservation boundaries.

¶4    Having obtained judgments in the Fort Peck Tribal Court, plaintiffs then brought suit in the Montana Fifteenth Judicial District Court against Anderson pursuant to the Uniform Foreign Money-Judgments Recognition Act, codified at Title 25, Chapter 9, part 6, MCA (1995) (the Recognition Act).  Plaintiffs requested that the District Court enter its order recognizing the Tribal Court judgments and granting full faith and credit to said judgments with rights of full enforcement pursuant to Montana law.  Anderson entered a special appearance in each state court suit and moved to dismiss, claiming that the District Court had neither personal nor subject matter jurisdiction.

¶5    Following briefing and a hearing, the District Court entered its findings of fact, conclusions of law and judgment.  The court ruled that the Fort Peck Tribal Court judgments must be recognized under the provisions of the Recognition Act because the Tribes fall within the definition of "foreign state" set out at § 25-9-602(2), MCA (1995). Additionally, the court concluded that even if the provisions of the Recognition Act do not apply to tribal court judgments, § 25-9-608, MCA (1995), does not prevent the recognition of a foreign judgment in situations not covered by the Act, and that, in this case, the District Court was required to recognize the Tribal Court judgments under the doctrine of comity and our decision in Wippert v. Blackfeet Tribe (1982), 201 Mont. 299, 654 P.2d 512.

¶6    Anderson then filed a timely motion for new trial and/or amendment of judgment. The Assiniboine and Sioux Tribes of the Fort Peck Reservation appeared amicus curiae in his support.  The court did not rule on this motion, and, accordingly, it was ultimately deemed denied pursuant to Rule 59(d), M.R.Civ.P.

¶7    In the meantime, a state writ of execution was issued in each case commanding the Sheriff of Roosevelt County to satisfy the state court judgments through seizure of Anderson's assets.  Plaintiffs did not seek enforcement of the Tribal Court judgments through the Fort Peck Tribal Court. A nominal off-Reservation bank account balance was seized, but the main focus of the state execution proceedings was and is against Anderson's on-Reservation assets.  Anderson timely appealed.

ISSUE

¶8    The question which we must answer in this appeal is whether a state court can enforce a tribal court judgment within the exterior boundaries of an Indian reservation via state law and state execution proceedings.  We answer this question in the negative.


DISCUSSION

¶9    Whether a state court has the power to utilize state law and execution procedures to enforce a tribal court judgment within the exterior boundaries of an Indian reservation is a question of law.  We review legal questions de novo.  We determine simply whether the courtþs interpretation of the law is correct.  Agri West v. Koyama Farms, Inc. (1997), 281 Mont. 167, 170, 933 P.2d 808, 810; Day v. Child Support Enforcement Div. (1995), 272 Mont. 170, 175, 900 P.2d 296, 299.


¶10   Anderson argues that the District Court has no power to enforce the two Tribal Court judgments within the exterior boundaries of the Fort Peck Reservation.  He contends that, since he is an enrolled member of the Fort Peck Tribes, the state court does not have personal jurisdiction over him.  Anderson also argues that since the subject matter of the Tribal Court suits both involve transactions arising on the Reservation, the state court does not have subject matter jurisdiction either.  Anderson maintains that the Fort Peck Tribal Court is the only court with authority to enforce judgments against Tribal members on the Reservation.  He points out that the Tribal Court is open to non-Indian judgment creditors.  He also emphasizes that the procedures for enforcement of judgments under Montana law contain numerous differences from the Tribal execution procedures and exemptions contained in the Fort Peck Comprehensive Code of Justice, and that the latter are generally more favorable to the judgment debtor.


¶11   Anderson also maintains that the District Court erred when it used the Recognition Act as a basis for its decision.  He argues that, even assuming the Recognition Act applies, a state court recognizing a judgment under that statute still needs jurisdiction over the subject matter and over the parties to proceed with an enforcement action.


¶12   Furthermore, Anderson contends that the District Court erred in relying on our decision in Wippert.   He points out that all parties in that case, including the Indian parties, had requested the state court to determine the validity of the judgment at issue. To the contrary, in the case at bar, Anderson does not consent, and, in fact, actively resists imposition of jurisdiction by the state court.


¶13   Finally, Anderson contends that even if the District Court did have jurisdiction, our decision in Agri West requires a district court to abstain in favor of enforcement of judgments in tribal court.   (Since we have resolved this case on the basis of Andersonþs other arguments, we do not address this contention.)


¶14  Plaintiffs, on the other hand, maintain that under Wippert a judgment creditor may bring a suit in state district court to enforce a judgment of a tribal court.  Plaintiffs contend that state courts, including Montana, generally have adopted the doctrine of comity in determining whether to enforce the judgments of foreign states, including tribal court judgments, and that the doctrine of comity is essentially codified in the provisions of the Recognition Act.  Moreover, plaintiffs contend that recognition or enforcement of a foreign judgment, or in this case the Tribal Court judgments, does not rely upon personal jurisdiction over the defendant or subject matter jurisdiction over the underlying

claim.  Plaintiffs maintain that Anderson attempts to confuse jurisdiction in the original proceeding with jurisdiction to enforce the judgment rendered in a competent court.

¶15  With these arguments and the District Courtþs decision in mind, we turn to the case law.  þIndian law is uniquely federal in nature, having been drawn from the Constitution, treaties, legislation and an þintricate web of judicially made Indian law.þþ Wilson v. Marchington (9th Cir. 1997), 127 F.3d 805, 813 (quoting Oliphant v. Suquamish Indian Tribe (1978), 435 U.S. 191, 206, 98 S.Ct. 1011, 1020, 55 L.Ed.2d 209).  Accordingly, recognition of tribal judgments, by necessity, requires that the ultimate decision governing the recognition and enforcement of a tribal judgment be founded upon federal law.  Wilson, 127 F.3d at 813 (citations omitted).

¶16  It is well-settled that, absent the consent of all Indian parties, the state courts of Montana lack jurisdiction to adjudicate disputes arising from transactions within the exterior boundaries of an Indian reservation and involving tribal members.  In Williams v. Lee (1959), 358 U.S. 217, 223, 79 S.Ct. 269, 272, 3 L.Ed.2d 251, 255-56, the Supreme Court declared tribal jurisdiction exclusive over a lawsuit arising out of on-reservation sales transacted between a non-Indian plaintiff and an Indian defendant. Accord Kennerly v. District Court (1971), 400 U.S. 423, 91 S.Ct. 480, 27 L.Ed.2d 507.

¶17  This Court has, likewise, confirmed that Montanaþs courts have no subject matter jurisdiction over an action arising on an Indian reservation brought by a non-Indian plaintiff against an enrolled member of the tribe residing on the reservation.  See for example,  Security State Bank v. Pierre (1973), 162 Mont. 299, 511 P.2d 325; Milbank Mut. Ins. Co. v. Eagleman (1985), 218 Mont. 58, 705 P.2d 1117; and Geiger v. Pierce (1988), 233 Mont. 18, 758 P.2d 279.

¶18  The issue in the case at bar, however, is not whether the underlying transactions between plaintiffs and Anderson were subject to the jurisdiction of the state courts of Montana.  Clearly, they were not.  Here, the question involves the extent to which, if at all, a state court, using state law and by state execution procedures, can enforce a tribal court judgment within the exterior boundaries of an Indian reservation.   To answer this question, we, again, turn to federal case law.

¶19  It is axiomatic that a court has the power to enforce its judgments within its own jurisdiction.  However,

    [n]o legal judgment has any effect, of its own force, beyond the limits of
    the sovereignty from which its authority is derived.  Because states and
    Indian tribes coexist as sovereign governments, they have no direct power
    to enforce their judgments in each otherþs jurisdictions.

Wilson, 127 F.3d at 807.  This rule follows  the rationale of the Supreme Court in Williams.

¶20  In Williams, the Supreme Court pointed out that þ[e]ssentially, absent governing Acts of Congress, the question has always been whether the state action infringed on the right of reservation Indians to make their own laws and be ruled by them.þ  Williams, 358 U.S. at 220.  In the case at bar, it is clear that the Tribal Court had exclusive jurisdiction over plaintiffsþ underlying actions against Anderson.  Furthermore, the record is clear that the Fort Peck Tribes have established procedures, exemptions and other standards for enforcement and execution of Tribal Court judgments under Title IV, Chapter 3 of the Fort Peck Comprehensive Code of Justice.  These procedures, exemptions and other standards, codify the Tribeþs policies on how judgments of the

tribal court shall be executed. By and large, these procedures, exemptions and standards are more favorable to debtors than the procedures, exemptions and standards under Montana state law.

¶21  Where, as here, the Tribe has adopted a comprehensive body of law for enforcing the judgments of its courts, allowing Montana state courts to enforce Tribal Court judgments within the exterior boundaries of the Indian Reservation would run afoul of the Supreme Courtþs decision in Williams, not to mention our decisions in Geiger, Milbank Mutual and Pierre.  If, on the Reservation, a state court were to enforce a Tribal Court judgment utilizing the state's own execution procedures and laws, the state would effectively replace the Tribeþs enforcement procedures with its own, and, thus, would plainly "undermine the authority of the tribal courts over Reservation affairs" and "infringe on the right of the Indians to govern themselves."  Williams, 358 U.S. at 223. The result would be a substantial intrusion on Tribal governmental authority.

¶22  With that basic principle in mind, we also conclude that state courts may not enforce tribal court judgments within the exterior boundaries of an Indian reservation via the Recognition Act.  The Recognition Act requires state courts to enforce foreign judgments in the same manner as the judgment of a sister state that is entitled to full faith and credit.  Section 25-9-604, MCA (1995).  A "foreign judgment" is "any judgment of a foreign state granting or denying recovery of a sum of money, other than a judgment for taxes, a fine or other penalty, or a judgment for support in matrimonial or family matters."  Section 25-9-602(1), MCA (1995).  A "foreign state" is "any governmental unit other than the United States or any state, district, commonwealth, territory, or insular possession thereof or the Panama Canal Zone, the Trust Territory of the Pacific Islands, or the Ryukyu Islands." Section 25-9-602(2), MCA (1995).

¶23  In Day, we expressly reserved the question of whether the Recognition Act is applicable to Indian tribal court orders, judgments and decrees that do not involve child support.  We also expressly declined to render any opinion with regard to the interplay between the Recognition Act, the Uniform Enforcement of Foreign Judgments Act (Title 25, Chapter 9, part 5, MCA) and our decision in Wippert as regards such orders, judgments and decrees which do not involve child support.  Day, 900 P.2d at 300-01. Moreover, our further research has revealed no federal nor any state case authority under which an Indian tribal court judgment has been enforced, either on the reservation or off the reservation via the Recognition Act.  We do not need to resolve this point one way or the other, however.

¶24  Even assuming, without deciding, that the Recognition Act may, under appropriate circumstances, be applicable to enforce a tribal court judgment, we cannot agree that this Act would be applicable in the case at bar.  Here, plaintiffs seek to use the Recognition Act to enforce judgments originally entered by the Tribal Court.  Plaintiffs seek to enforce such judgments, not within the jurisdiction of the state court, i.e., off-Reservation, but, rather, within the jurisdiction of the rendering court itself.

¶25   An example serves to illustrate this misapplication of the Recognition Act. Assume  that a Montana creditor obtained a money judgment against a Canadian debtor in a Canadian court.  Under the Recognition Act, Montana would be required to recognize and enforce the Canadian judgment in Montana in the same manner as the judgment of a sister state that is entitled to full faith and credit.  The point to be made, however, is that while Montana courts would have authority under the Recognition Act to enforce the Canadian judgment in Montana using Montana law and execution procedures, this stateþs courts would have no jurisdiction to enforce the state judgment

issued under the Recognition Act in Canada.  Obviously, if the Montana creditor wished to enforce his judgment in Canada, then he would be required to comply with the execution procedures mandated by Canadian law and the Canadian courts.

¶26  In the same manner, and again assuming, without deciding, that a tribal court judgment is  a "foreign judgment" from a "foreign state," Montana state courts would have jurisdiction to enforce a tribal judgment via the Recognition Act within the jurisdiction of Montana's courts, but not within the jurisdiction of the tribal court rendering the judgment in the first place nor within the jurisdiction of some other competent court.  Montana courts have no power via the Recognition Act or otherwise to enforce a tribal court judgment within the exterior boundaries of an Indian reservation any more than they have the power to enforce a Canadian judgment in Canada or, for that matter, a Wyoming judgment in Wyoming.  In short, to enforce a judgment within the jurisdiction of the court rendering it or within the jurisdiction of some other competent court, it is incumbent upon the person seeking to enforce the judgment that he or she comply with and utilize the procedures and law of the government and the court within whose jurisdiction enforcement is sought.

¶27  Accordingly, we conclude that the District Court erred in determining that the tribal court judgments at issue in this case could be enforced within the exterior boundaries of the Fort Peck Reservation via the Recognition Act.  We leave for another day our decision on the question of whether the Recognition Act may be utilized to enforce Indian tribal court judgments, orders and decrees, not involving child support, off the Reservation.  In this regard, however, we note that there already exist procedures outside the Recognition Act  allowing state courts to enforce tribal court judgments off-reservation.  See Wippert, 654 P.2d 512; Day, 900 P.2d 296.  Thus, we are not inclined to reach the applicability of the Recognition Act to tribal court judgments on the facts presented here.

¶28  Finally, we also conclude that the District Courtþs reliance on our decision in Wippert is misplaced.  In Wippert we held that the orders, judgments and decrees of an Indian tribal court are not entitled to full faith and credit, but are, nevertheless, to be treated with the same deference shown the decisions of foreign nations as a matter of comity.  Wippert, 654 P.2d at 515.  In Wippert, however, all parties to the underlying lawsuit in the tribal court thereafter, and without opposition, participated in the state court proceedings involving enforcement of the judgment.  Wippert, 654 P.2d at 514-15.  More importantly,  Wippert did not directly address the precise issue presented in this appeal, and, thus, cannot be read for the proposition that a state court may enforce a tribal court judgment within the exterior boundaries of an Indian reservation using state law and state execution procedures where the Indian debtor actively resists imposition of the state courtþs jurisdiction.  While under Wippert, a state court may enforce a tribal court judgment outside of the exterior boundaries of the reservation on the basis of comity, see Wippert, 654 P.2d at 515; Day, 900 P.2d at 301, Wippert has no application to the enforcement by state courts of tribal judgments within the exterior boundaries of an Indian reservation where the tribal litigant resists state court jurisdiction.

¶29  To summarize, then, where the judgment debtor is a tribal member residing within the exterior boundaries of the reservation, tribal courts have exclusive jurisdiction to enforce tribal court judgments against assets owned by the tribal member and located within the exterior boundaries of the reservation.  State courts may enforce tribal court judgments against tribal members living outside of the exterior boundaries of the reservation and against off-reservation assets owned by tribal members on the basis of comity, assuming that the holder of the judgment brings an action or special proceeding in district court.  Wippert, 654 P.2d at 515.  If the tribal court judgment involves child

support, the simplified registration procedures of the Uniform Enforcement of Foreign Judgments Act and other state enforcement remedies are also available.  Day, 900 P.2d at 301.

¶30  This cause is reversed and remanded to the District Court for further proceedings consistent with this opinion.  Specifically, the District Court may give deference to the Fort Peck Tribal Court judgments by entering a state court judgment in favor of the plaintiffs and against Anderson on the basis of comity and upon the filing of an action or special proceeding in the District Court to enforce the Tribal Court judgments on that basis.  The state court judgment may be enforced against any off-reservation assets owned by Anderson.  The Fort Peck Tribal Court, however, retains exclusive jurisdiction to enforce its judgments against Andersonþs on-reservation assets within the exterior boundaries of the Fort Peck Reservation.

¶31  Reversed and remanded for further proceedings consistent with this opinion.

/S/   JAMES C. NELSON

We Concur:

/S/  J. A.  TURNAGE
/S/  KARLA M. GRAY
/S/  JIM REGNIER
/S/  W. WILLIAM LEAPHART