No. 97-153

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 149

SEYPAR, INC., a Florida corporation,

Plaintiff and Appellant,

v.

WATER AND SEWER DISTRICT

NO. 363,

Defendant and Respondent.

APPEAL FROM: District Court of the Fifth Judicial District,

In and for the County of Madison,

The Honorable Thomas A. Olson Judge presiding.


COUNSEL OF RECORD:


For Appellant:


Michael J. Lilly, Berg, Lilly, Andriolo & Tollefsen, Bozeman, Montana


For Respondent:


Michael E. Wheat, Julieann McGarry, Cok, Wheat & Brown, Bozeman, Montana


Submitted on Briefs: July 17, 1997


Decided: June 11, 1998

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

**¶1 Plaintiff Seypar, Inc. (Seypar), appeals from a May 9, 1995 Summary Judgment Order issued by the Fifth Judicial District Court, Madison County, holding that Defendant Water and Sewer District No. 363 (the District) had legal authority to assess a $500 sewer hook-up inspection fee for each of Seypar's 70 condominium units as well as the court's January 6, 1997 Findings of Fact and Conclusions of Law and January 30, 1997 Judgment holding that the amount of the fee was reasonable. We affirm.**

**¶2 Seypar raises the following issues on appeal:**

> **¶3 1. Did the District Court err when it concluded, as a matter of law, that the District had legal authority to assess and collect sewer hook-up inspection fees as a condition precedent to the hook-up of Seypar's condominium units to the District's sewer system?**

> **¶4 2. Is the District Court's finding that the District's $500 sewer hook-up inspection fee charged for each of Seypar's 70 condominium units was reasonable clearly erroneous?**

## FACTUAL AND PROCEDURAL BACKGROUND

**¶5 On October 29, 1993, Seypar, Inc. (Seypar), a Florida corporation with its principal place of business in Big Sky, Montana, filed a three count complaint in the Fifth Judicial District Court, Madison County, against Water and Sewer District No. 363, Rural Improvement District No. 305, and the Montana Department of Health and Environmental Sciences (DHES). However, Seypar settled all issues regarding its Second and Third Claims against DHES; therefore, DHES was dismissed as a party to this action. Furthermore, Rural Improvement District No. 305 (RID 305) was dismissed as a party to this action when Water and Sewer District No. 363 (the District) was substituted in its place after the District acquired all assets and assumed all liabilities of RID 305. Consequently, the District remained the sole defendant and Seypar's First Claim remained the final issue to be resolved.**

¶6 On September 16, 1994, Seypar and the District filed an agreed statement of facts, which is summarized as follows:

¶7 By resolution of the Gallatin County Commissioners dated August 23, 1971, RID 305 was created pursuant to Title 16, Chapter 16, RCM (1947) (as amended), for the purpose of constructing, maintaining, repairing, operating and expanding a sanitary sewage treatment facility in the Big Sky Recreational Area. RID 305 remained in existence until the District acquired all assets and assumed all liabilities of RID 305 in February, 1994. While in existence, RID 305 was governed by a three member Board of Trustees who in 1985 adopted and began charging a $300 sewer hook-up inspection fee, and, subsequently, raised this fee to $500 in 1989. The sewer hook-up inspection was conducted by the District Engineer to ensure that a private connection to the public sewer system was done correctly and complied with required specifications.

¶8 Seypar purchased certain real property in Madison County from The Association of Unit Owners of Deer Lodge Condominium, Inc., under the supervision and approval of the Fifth Judicial District Court, Madison County, Cause No. 7457. For approximately twenty years, the real property had been the site of Deer Lodge Condominiums, a 126 unit condominium complex that discharged its sewage waste into RID 305's sewer system and paid monthly sewage assessments fees. However, the Deer Lodge Condominiums were condemned and razed prior to Seypar's purchase of the real property. On February 24, 1989, the court, in Cause No. 7457, issued a supplemental supervisory order related to the purchase of the real property which provided, in part, that The Association of Unit Owners of Deer Lodge Condominium, Inc.'s utility hook-up service rights for the demolished Deer Lodge Condominiums would remain vested and an asset for redevelopment and/or resale of the property.

¶9 On December 11, 1991, Seypar submitted a preliminary site plan to the Big Sky Architectural Committee for the design and construction of 70 condominium units on the real property, commonly known as the Big Horn Condominiums. The Big Sky Architectural Committee reviewed the site plan and issued a permit for Phase I, Units 1-13 only; Seypar commenced and completed construction of these units in 1992. Subsequently, the Big Sky Architectural Committee issued permits for Phase 2, the next 18 units, and Phase 3, the next 17 units; Seypar commenced and completed construction of these units in 1993 and 1994, respectively. From the record, it is apparent that Seypar completed construction of the remaining 22 units in 1995.

¶10 Rather than using the existing Deer Lodge Condominiums sewer lines which ran from each individual condominium to the District's collection system, Seypar constructed its own sewer feeder lines to connect to the District's collection system. As a condition precedent to the sewer hook-ups for each phase of construction, Seypar was required to pay a $500 sewer hook-up inspection fee per unit, which it paid under protest, first to RID 305 and then to the District after the District acquired all assets and assumed all liabilities of RID 305 in 1994 (hereinafter, both RID 305 and the District are collectively referred to as "the District").

¶11 On October 17, 1994, the parties, relying on their agreed statement of facts, filed cross-motions for summary judgment concerning Seypar's remaining first claim for relief which requested that the District Court declare the District's assessment of the sewer hook-up fees illegal, order the District to refund those fees Seypar paid under protest, and prohibit the District from assessing Seypar any future sewer hook-up fees associated with Seypar's reconstruction of the Big Horn Condominium units. On May 9, 1995, the District Court issued an order denying Seypar's motion and granting the District's motion. While the District Court addressed several related issues raised by the parties, Seypar only appeals that part of the court's summary judgment order wherein the court held that, as expressly set forth in § 7-12-2120(1), MCA, as well as by analogy to § 7-12-4133, MCA, and § 7-13-4304(3), MCA, the District acted within its legal authority when assessing an inspection fee for Seypar's initial hook-ups to the District's sewer line and that the District would not be prohibited from assessing future inspection fees for future sewer hook-ups.

¶12 Because the District Court found a genuine issue of material of fact as to whether the District's $500 sewer hook-up inspection fee assessed against each condominium unit was reasonable, the court denied both parties' motions for summary judgment on this issue and set a date for a non-jury hearing. Subsequent to the hearing on this issue, wherein testimony was heard and exhibits were received, the court entered findings of fact and conclusions of law on January 6, 1997, concluding that the $500 sewer hook-up inspection fee was reasonable because Seypar failed to rebut a presumption of reasonableness concerning the fee. On January 30, 1997, the court entered judgment in favor of the District, dismissing Seypar's complaint with prejudice; releasing from protest all of Seypar's sewer hook-up inspection fees paid to the District to be applied and used by the District as it deemed appropriate; and assessing costs of $135. Seypar appeals from both the District Court's order granting the District summary judgment and the court's subsequent judgment in the District's

No

**favor.**

## DISCUSSION

**¶13** 1. Did the District Court err when it concluded, as a matter of law, that the District had legal authority to assess and collect sewer hook-up inspection fees as a condition precedent to the hook-up of Seypar's condominium units to the District's sewer system?

**¶14 Seypar argues that the District, a multi-county rural improvement district including areas within both Madison and Gallatin Counties, is administered by three trustees who have the same powers to administer as do county commissioners in single county districts. *See* § 7-12-2123, MCA. Seypar notes that nothing in §§ 7-12-2101, et seq., MCA, specifically authorizes the District to charge sewer hook-up inspection fees, and, therefore, is without power to do so. Rather, Seypar asserts that just as in *RAE Subdivision v. Frank J. Trunk & Son* (1991), 251 Mont. 22, 823 P.2d 845, the District here is only authorized to raise revenue by strictly following the statutes which govern its operation and conduct. Relying on *Miller v. Yellowstone County* (1988), 234 Mont. 193, 761 P.2d 829, Seypar maintains that the District only had two options for raising revenue and under either option the statutory procedure providing for notice, hearing, and objection must be followed. Seypar contends that the whole cost of maintaining, preserving or repairing improvements should have been assessed to the entire District and paid by the property owners through taxes, under § 7-12-2120, MCA, or, alternatively, paid by an improvement district maintenance fund under § 7-12-2162, MCA.**

**¶15 Seypar requests that we reverse the District Court's Order granting the District summary judgment. Seypar asserts that the District Court erred, as a matter of law, in concluding that the District had legal authority to assess and collect sewer hook-up inspection fees against Seypar for three reasons. First, the fees charged to Seypar and paid under protest, are not levied in accordance with either § 7-12-2120, MCA, or § 7-12-2162, MCA.**

**¶16 Second, Seypar argues that under § 7-12-2120(2), MCA, the District is specifically prohibited from assessing fees to an individual lot owner which are not assessed against all remaining lot owners. Seypar argues that the District Court**

erred by ignoring § 7-12-2120(2), MCA, and instead focusing on § 7-12-2120(1), MCA. Seypar contends that § 7-12-2120(1), MCA, imposes a duty upon the District to maintain the improvements created within its boundaries and empowers the District to take steps to fulfill this duty, but does not grant the District revenue raising authority. Rather, Seypar contends that only § 7-12-2120(2), MCA, addresses the District's revenue raising authority. Furthermore, Seypar asserts that the reference in § 7-12-2120(2), MCA, to § 7-12-2108, MCA, does not empower the District to assess sewer hook-up inspection fees, and, moreover, the District did not follow the procedure of notice, hearing and objection in establishing the fees as required by § 7-12-2108, MCA.

¶17 Third, Seypar argues that the District Court erred when it relied, by analogy, on § 7-12-4133, MCA (authority of municipalities to regulate an individual landowner's connection to sewer lines), and § 7-13-4304, MCA (authority of municipalities to charge fees for those connections). Rather, Seypar asserts that these two statutes support Seypar's position, not the District's, because each specifically authorizes the collection of fees, such as sewer hook-up inspection fees, and no similar authorization is provided to the District by §§ 7-12-2101, et seq., MCA, the statutes governing its conduct.

¶18 The District responds that the District Court correctly concluded that the District had the authority to impose sewer hook-up inspection fees. Furthermore, the District contends that the parties do not dispute that the District had legal power to assess sewer hook-up inspection fees, but rather who should pay the fees--the individual lot owner who connects to the public sewer system or all property owners in the District.

¶19 The District argues that § 7-12-2120(1), MCA, provides the District with a broad necessarily implied power to impose sewer hook-up inspection fees against an individual lot owner connecting to the District's sewer system. The District relies on *Diefenderfer v. City of Billings* (1986), 223 Mont. 487, 726 P.2d 1362, and *State ex rel. Swart v. Molitor* (1981), 190 Mont. 515, 621 P.2d 1100, for the proposition that in the absence of express statutory authority, a "local self-governing unit" may exercise any power not prohibited by Montana law. The District asserts that while technically it is not a "local self-governing unit" established by charter, it is a political subdivision of the State and for all practical purposes operates as a "local self-governing unit." Therefore, the District contends that despite the absence of any statute explicitly

authorizing sewer hook-up inspection fees, it had the necessarily implied legal authority to impose such fees against Seypar, the individual lot owner, just as the city in *Diefenderfer* had to assess a surcharge against developers and the county in *Molitor* had to impose a review fee against individual landowners.

¶20 Additionally, the District argues that the District Court properly concluded that § 7-12-2120(2), MCA, and § 7-12-2108, MCA, do not control because these statutes provide that the cost of an improvement may be spread across the entire district when it is "of more than local or ordinary public benefit," such as reconstruction of a sewer main, because all properties in the district are all primarily benefitted. *See* § 7-12-2108, MCA. Here, the District argues, only Seypar, an individual lot owner, is benefitting from the sewer connection, and, therefore, § 7-12-2120(1), MCA, appropriately allows for the imposition of a fee against Seypar. Furthermore, the District argues that the District Court correctly held that § 7-12-4133, MCA, and § 7-13-4304, MCA, demonstrate by analogy that the District has broad police powers to recoup from an individual property owner in a rural improvement district the cost of inspecting the individual's private connection to the public sewer system, given that the individual's property primarily benefits from the sewer connection.

¶21 We review *de novo* a district court's summary judgment ruling by applying the same evaluation as did the district court pursuant to Rule 56, M.R.Civ.P. *Montana Public Employees Assoc. v. Department of Transp.*, 1998 MT 17, ¶ 8, 954 P.2d 21, ¶ 8, 55 St.Rep. 60, ¶ 8 (citations omitted). In the case at bar, the parties stipulated to an agreed statement of facts, and, therefore, no genuine issues of fact exist. Accordingly, we must only determine whether the trial court correctly concluded that the District was entitled to summary judgment as a matter of law. *Heath v. Montana Mun. Ins. Auth.*, 1998 MT 111, ¶ 9, 55 St.Rep. 437, ¶ 9 (citing *Loss v. Lumbermens Mut. Cas. Co.* (1997), 282 Mont. 80, 81, 936 P.2d 313, 314).

¶22 We agree with Seypar that nothing in §§ 7-12-2101, et seq., MCA, the statutory sections governing rural improvement districts, specifically authorized the District to charge "sewer hook-up inspection fees." Furthermore, nothing in §§ 7-12-2101, et seq., MCA, characterizes the District as a "local self-governing unit," and, consequently, §§ 7-12-4133 and 7-13-4304, MCA (authorizing municipalities to regulate and charge fees for an individual landowner's sewer connection), do not provide the District with any type of authority to charge sewer hook-up inspection fees, either directly or by analogy. Similarly, the District's reliance on *Diefenderfer*

and *Molitor* to assert that, as a local self-governing unit, it may exercise any power not prohibited by Montana law is also improper. As Seypar points out, the District is not a local self-governing unit and while its board of trustees shares the same administrative powers as county commissioners of a single county rural improvement district, § 7-12-2123, MCA, these powers are not the same as those powers the county commission exercises as a county governmental entity. Furthermore, we also point out that *RAE*, which Seypar relies upon, is distinguishable given that the issue presented in that case involved whether a water and sewer district had statutory authority to impose annual assessments against non-users within the district.

¶23 However, despite the inapplicability of the foregoing statutes and case law, we disagree with Seypar that the District was without power to assess sewer hook-up inspection fees against Seypar. To the contrary, § 7-12-2151, MCA, a statute overlooked by both parties, provides rural improvement districts with the authority to defray the cost of an improvement made or acquired for the benefit of the district by assessing the cost of the improvement against those benefitted. After reviewing the statutes governing rural improvement districts, we conclude that the District Court's reliance on and the parties subsequent debate over § 7-12-2120, MCA, is misplaced considering the applicability of § 7-12-2151, MCA.

¶24 Section 7-12-2120, MCA, provides:

> (1) Whenever any sanitary or storm sewers, lights or light systems, waterworks plants, water systems, sidewalks, or any other special improvements petitioned for or created by the state or federal government have been made, built, constructed, erected, or accomplished as provided in this part, it is hereby made the *duty of the board of county commissioners under whose jurisdiction the district was created or supervised or directed to adequately and suitably maintain and preserve said improvements and to fully keep the same in proper repair and operation*, by contract or otherwise, in such way or manner as the board shall deem suitable and proper.
>
> (2) *The whole cost of maintaining, preserving, and repairing of said improvements in any improvement district shall be paid by assessing the entire district in the method provided for by 7-12-2108.* [Emphasis added.]

**¶25 Section 7-12-2151, MCA, provides:**

(1) *To defray the cost of making or acquiring any of the improvements provided for in this part, including incidental expenses, the board of county commissioners shall assess the entire cost of the improvements against benefited lots, tracts, or parcels of land in the district, based upon the benefits received, and shall adopt one or any combination of the following methods of assessment for each improvement made or acquired for the benefit of the district:*

(a) Each lot, tract, or parcel of land assessed in such district may be assessed with that part of the whole cost which its assessable area bears to the assessable area of all the benefited lots, tracts, or parcels in the district, exclusive of streets, avenues, alleys, and public places. For the purposes of this subsection (1)(a), "assessable area" means an area of a lot, tract, or parcel of land representing the benefit conferred upon the lot, tract, or parcel by the improvement. Assessable area may be less than but may not exceed the actual area of the lot, tract, or parcel.

(b) Each lot, tract, or parcel of land assessed in the district may be assessed with that part of the whole cost of the improvement based upon the assessed value of the benefited lots or pieces of land within said district, if the board determines such assessment to be equitable in proportion to and not exceeding the benefits received from the improvement by the lot, tract, or parcel.

(c) Each lot, tract, or parcel of land in the district abutting upon the street where the improvement has been made may be assessed in proportion to its lineal feet abutting the street.

(d) Each lot, tract, or parcel of land in the district served by a utility connection may be assessed an equitable lump sum for the connection based on the bid price in the applicable contract.

(2) *The board may use one or any combination of methods of assessment in a single special improvement district and, if more than one improvement is undertaken, need not assess each lot, tract, or parcel in the district for the cost of all the improvements.*

(3) The board in its discretion shall have the power to pay the whole or any part of

the cost of any street, avenue, or alley intersection out of any funds in its hands available for that purpose or to include the whole or any part of such costs within the amount of the assessment to be paid by the benefited property in the district.

Section 7-12-2151, MCA (1985) (emphasis added)(amended in 1993 to include an additional method of assessment, "(1)(d) Each lot, tract, or parcel of land in the district may be assessed an equal amount based upon the total cost of the improvement." Sec. 1, Ch. 269, L. 1993).

¶26 To interpret a statute, we first look to the plain meaning of the words it contains. When the statutory language is clear and unambiguous, the statute speaks for itself, and, consequently, we will not use other means of interpretation. "In the search for plain meaning, 'the language used must be reasonably and logically interpreted, giving words their usual and ordinary meaning.' " *Werre v. David* (1996), 275 Mont. 376, 385, 913 P.2d 625, 631 (citations omitted). In other words, we must simply "ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA.

¶27 While § 7-12-2120, MCA, sets forth the duty of county commissioners to "maintain," "preserve" or "repair" an improvement and mandates that the costs associated therewith shall be assessed against the entire district and paid through property owners' taxes, § 7-12-2151, MCA, provides that the cost of "making" or "acquiring" an improvement shall be assessed through a variety of methods against only those lots, tracts, or parcels of land in the district that are benefitted. Furthermore, § 7-12-2153(1), MCA (1985), provides:

> The cost and expense connected with and incidental to the formation of any special improvement district, including the cost of preparation of plans, specifications, maps, or plats; engineering, superintendence, and inspection; preparation of assessment rolls; and the other incidental expenses described in 7-12-2101(7) shall be considered a part of the cost and expenses of making the improvements within such special improvement district.

In turn, § 7-12-2101(7)(a), MCA, provides that the term "incidental expenses" includes "the compensation of the [District] engineer for work done by him[.]"

¶28 The issue before us involves a fee assessed against each of Seypar's private sewer connections to the District's public sewer system to cover the costs associated with the District Engineer's inspection of these connections. As such, these individual sewer hook-ups cannot be characterized as "maintenance," "preservation" or "repair" of the District's existing sewer system, and, therefore, § 7-12-2120, MCA, does not apply. *See Miller*, 234 Mont. at 195, 761 P.2d at 830 (holding that replacement of a water main to provide nine times the capacity of the existing main was reconstruction, not maintenance, and, therefore, the county commissioners erred by assessing the entire cost against the district under § 7-12-2120, MCA, rather than creating a new special improvement district). Rather, each hook-up constitutes an improvement made to the District's sewer system, and, therefore, the provisions of § 7-12-2151, MCA, apply.

¶29 In this case, the District Board of Trustees determined that each private sewer connection to the District's public sewer system primarily benefitted the individual property owner that constructed the private sewer connection. The District required the District Engineer to inspect each private sewer connection made to the District's public sewer system to ensure that the connection complied with certain specifications. To defray the cost of each sewer hook-up inspection, the District assessed the cost of the required inspection of these private sewer connections against the individual property owner as the primary beneficiary of the improvement rather than assessing all property owners within the District. Accordingly, Seypar, as an individual property owner constructing private sewer connections to the District's public sewer system for each of its 70 condominium units was assessed a sewer hook-up inspection fee for each unit.

¶30 To require all the property owners in the District to pay for a portion of the inspection cost for each new private connection to the District's public sewer system, as Seypar suggests is proper, would allow an individual property owner to reap a large benefit at the expense of all other property owners within the District. Such a result would violate the provisions of § 7-12-2151, MCA, which authorizes a rural improvement district to choose from a variety of assessments methods to defray the costs of making or acquiring an improvement to ensure an equitable result for all property owners in the district. Therefore, we conclude that § 7-12-2151, MCA, provided the District with the legal authority to assess sewer hook-up inspection fees against Seypar, individually, as the primary beneficiary of the improvement. By assessing only Seypar for these inspection fees, the District reached an equitable

result.

¶31 "This Court will uphold the decision of a district court, if correct, regardless of the lower court's reasoning in reaching its decision." *Hagan v. State* (1994), 265 Mont. 31, 35, 873 P.2d 1385, 1387 (citations omitted). Therefore, we hold that the District Court correctly concluded that the District acted within its legal authority when assessing an inspection fee for each of Seypar's initial hook-ups to the District's public sewer system and that the District would not be prohibited from assessing future inspection fees for future sewer hook-ups. Accordingly, we affirm the District Court's grant of summary judgment in the District's favor.

¶32 2. Is District Court's finding that the District's $500 sewer hook-up inspection fee charged for each of Seypar's 70 condominium units was reasonable clearly erroneous?

¶33 Seypar argues that the District Court's conclusion that the District's $500 sewer hook-up inspection fee was reasonable is clearly erroneous. Relying in part on *State v. Police Court* (1923), 68 Mont. 435, 219 P. 810, Seypar asserts that the sewer hook-up inspection fee is analogous to city license fees, and, therefore, may not exceed the cost of license issuance, incidental inspection, and supervisory expenses. Seypar contends that the District Court failed to undertake a cost analysis concerning the relationship between fee revenue and the costs of regulation which would have revealed the amount it paid in sewer hook-up inspection fees exceeded the amount the District paid its engineer to conduct the inspections. Therefore, Seypar requests that we reverse the District Court's judgment and direct the court to declare the $500 sewer hook-up inspection fee unreasonable, and, therefore, void.

¶34 Relying on *Associated Students v. City of Missoula* (1993), 261 Mont. 231, 862 P.2d 380 (holding that a presumption of constitutional validity attaches to city ordinances), as did the District Court, the District responds that a presumption of validity attached to the District's assessment of a $500 sewer hook-up inspection fee. The District asserts that Seypar failed to present evidence sufficient to rebut the presumption that the $500 fee was reasonable. Therefore, the District argues that the Court correctly concluded that the $500 sewer hook-up inspection fee was reasonable.

¶35 Although the District Court concluded, as a matter of law, that the $500 sewer hook-up inspection fee was reasonable, we point out that the "reasonableness" of the

inspection fee is a question of fact. Therefore, it was for the District Court sitting without a jury, as the trier of fact, to weigh the evidence and judge the credibility of the witnesses in determining whether this fee is reasonable. *See Dean v. Austin Mut. Ins. Co.* (1994), 263 Mont. 386, 389, 869 P.2d 256, 258. We review a district court's findings of fact to determine whether those findings are clearly erroneous. *Daines v. Knight* (1995), 269 Mont. 320, 324, 888 P.2d 904, 906.

¶36 As explained previously, relying on statutes or case law involving municipalities and other local self-governing units is not proper given that the District is not a "local self-governing unit." Consequently, we will not compare the District's sewer hook-up inspection fee to a city license fee nor will we recognize a presumption of validity concerning the District's sewer hook-up inspection fee. Rather, to determine whether the District's $500 sewer hook-up inspection fee assessed against each of Seypar's 70 condominium units was reasonable, we consider the provisions of § 7-12-2151, MCA, the statute authorizing the District to impose these assessments.

¶37 Section 7-12-2151, MCA, provides in pertinent part:

> (1) To defray the cost of making or acquiring any of the improvements provided for in this part, including incidental expenses, *the board of county commissioners shall assess the entire cost of the improvements against benefited lots, tracts, or parcels of land in the district,* **based upon the benefits received**, and shall adopt one or any combination of the following methods of assessment for each improvement made or acquired for the benefit of the district:

(b) Each lot, tract, or parcel of land assessed in the district may be assessed with that part of the whole cost of the improvement based upon the assessed value of the benefited lots or pieces of land within said district, *if the board determines such assessment to be* **equitable in proportion to and not exceeding the benefits received** *from the improvement by the lot, tract, or parcel.*

> (2) The board may use one or any combination of methods of assessment in a single special improvement district and, if more than one improvement is undertaken, need not assess each lot, tract, or parcel in the district for the cost of all the improvements. [Emphasis added.]

¶38 Just as § 7-12-2151, MCA, provides the District with discretion to assess the costs

of making an improvement against benefitted property in the district, the statute also provides the District with discretion to determine the amount of each assessment as well. In this regard, § 7-12-2151, MCA, does not require an exacting method by which the District must assess the cost of an improvement. To illustrate, § 7-12-2151 (1), MCA, simply states that the District shall assess the cost of the improvement "based upon the benefits received," and § 7-12-2151(1)(b), MCA, allows the District to apportion the cost of the improvement among district property owners based on the assessed value of the benefitted property "if the [district] board determines the assessment to be equitable in proportion to and not exceeding the benefits received from the improvement by the lot, tract, or parcel." Seypar, as the plaintiff in this action and the party contesting the reasonableness of this fee had the burden of proving that the District's fee was unreasonable. *See* § 26-1-401, MCA. Seypar failed to meet this burden.

¶39 The District Court received evidence and heard testimony from a number of witnesses including Terry Threlkeld, Dee Rothschiller, and Jack Schunke. Terry Threlkeld worked as the District's Water and Sewer Systems Supervisor and District Engineer during the time the Big Horn Condominiums were under construction. He testified that part of his job duties included ensuring that the individual sewer hook-ups were in compliance with required health and safety specifications. He explained that to do this he was involved in the permit application process from start to finish-- he reviewed the hook-up applications and connection plans; held meetings with DHES, utility companies, the developer, and the developer's engineers; conducted on-site inspections; supervised the installation of new sewer service lines; and ensured that any necessary modifications to meet required specifications were completed.

¶40 Dee Rothschiller testified that, as the District's secretary, she attended all meetings, kept meeting minutes, and was the custodian for the District's records. Additionally, she processed all applications for private sewer connections to the District's sewer system, delivered the applications to the District Engineer, and deposited the fees collected. She further testified that the reason for the sewer hook-up inspection fee was to cover the costs of the District Engineer's inspection and that the increase in the fee from $300 to $500 in 1989 was due to increasing costs. She explained that she compared the District's sewer hook-up inspection fee to other ski resort charges to make sure that the District was being fiscally responsible to the property owners in the District and that the District's fee was low in comparison.

¶41 Seypar presented one expert witness, Jack Schunke, a licensed civil engineer who worked for Morrison-Maierle, a company hired by Seypar to handle engineering during Phase I of the Big Horn Condominiums construction. Schunke was asked to give an opinion concerning the reasonableness of the $500 sewer hook-up inspection fee. He testified that, based on his own cost analysis which only included information concerning the engineer's inspection duties and excluded any clerical or administrative duties associated with the sewer hook-up inspection, he considered the $500 fee high, but would not testify that the fee was unreasonable.

¶42 Based on the testimony of these witnesses and others, the District Court found that the District's $500 sewer hook-up inspection fee was reasonable. Upon review of the record, we conclude that this finding is not clearly erroneous. Nothing in the record establishes that the $500 sewer hook-up inspection fee was unreasonable--not even Seypar's own expert witness would testify that the fee was unreasonable. Consequently, Seypar failed in its burden of proof. As we stated previously, we will affirm a district court's decision, if correct, regardless of the district court's reasoning in reaching its decision. *Hagan*, 265 Mont. at 35, 873 P.2d at 1387. Accordingly, we affirm the District Court's judgment in favor of the District.

¶43 Affirmed.


/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER

/S/ JIM REGNIER