No. 98-111

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 161

JAMES D. THOMPSON, JULIA R. THOMPSON,

and CUSTER BATTLEFIELD TRADING COMPANY,

a Montana corporation,

Plaintiffs/Respondents,

vs.

CROW TRIBE OF INDIANS, DENIS ADAMS,

Tax Commissioner of the Crow Tribal Tax

Commission, TYRONE TEN BEAR, Chairman of

the Crow Tribal Tax Commission, and the CROW

TRIBAL TAX COMMISSION,

Defendants/Appellants.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Big Horn,

The Honorable David J. Cybulski, Judge presiding.

COUNSEL OF RECORD:

For Appellant

Dale T. White, Fredericks, Pelcyger, Hester & White, Louisville, Colorado; Majel Russell, Crow Tribal Legal Department, Billings, Montana

For Respondent:

Jay F. Lansing, Moses Law Firm, Billings, Montana

Submitted on Briefs: June 18, 1998

Decided: June 25, 1998

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

**¶1 This is an appeal from the District Court's Order and Memorandum filed January 13, 1998, in the Thirteenth Judicial District Court, Big Horn County, granting summary judgment to Respondents (hereinafter collectively referred to as Thompsons); denying summary judgment to Appellants (hereinafter collectively referred to as the Tribe); and voiding three Tribal tax liens. Also raised on appeal is the trial court's denial of the Tribe's motion to dismiss based on, among other grounds, the Tribe's sovereign immunity from suit. We reverse and remand for entry of an order of dismissal consistent with this opinion.**

**Background**

¶2 Thompsons brought this action against the Tribe in state district court seeking to cancel resort tax liens imposed by the Tribe on the gross receipts of Thompsons' business, Custer Battlefield Trading Company. While Thompsons are not members of the Crow Tribe, their business is located and conducted within the exterior boundaries of the Crow Indian Reservation and within Big Horn County. The resort tax was adopted by the Crow Tribal Council, was approved by the Area Director of the Bureau of Indian Affairs and is imposed on the consumers of the goods and services provided by Thompsons' business. The Crow Tribal Taxation Code (CTTC) authorizes and directs the various Tribal officials to administer and enforce collection of the tax. Thompsons are required under the CTTC to collect the tax on behalf of the Tribe and to remit tax payments to the Tribe along with reporting forms.

¶3 As a result of Thompsons' alleged failure to comply with these requirements, the Tribe, under other provisions of the CTTC, filed with the Big Horn County Clerk and Recorder three liens against Thompsons' business property for in excess of $200,000 in taxes claimed by the Tribe. The three liens, filed April 25, 1996, July 25, 1996, and September 23, 1997, are the subject of litigation in Crow Tribal Court.

¶4 Thompsons filed their action underlying this appeal in state district court on September 12, 1996, seeking to void and to cancel of record the tax liens. An initial motion to dismiss based on lack of subject matter jurisdiction and sovereign immunity filed by the Tribe was denied by the trial court. Thereafter, the Tribe answered and, ultimately, the court disposed of the case and voided the Tribe's tax liens on cross motions for summary judgment. This appeal followed.

## Issues

¶5 The Tribe raises three issues on appeal.

¶6 1. Whether the Tribe and its officials have waived immunity from being sued by Thompsons in state district court?

¶7 2. Whether the state district court possessed subject matter jurisdiction over Thompsons' cause of action?

¶8 3. Whether the Tribe's tax liens may be voided and canceled under the provisions of § 27-1-433, MCA?

¶9 We will address Issue 1. Because this issue is dispositive, we will not address Issues 2 or 3.

## Standard of Review

¶10 Where there are no genuine issues of material fact in dispute, we simply review, *de novo*, the district court's grant and denial of the parties' cross motions for summary judgment to determine whether the court's decision was correct as a matter of law. Rule 56(c), M.R.Civ.P.; *Seypar, Inc. v. Water and Sewer Dist. No. 363*, 1998 MT 149, ¶ 21, ___ Mont. ___, ¶ 21, ___ P.2d ___, ¶ 21, ___ St.Rep.___, ¶ 21 (citations omitted). Similarly, a court's determination of a motion to dismiss based on a claim of sovereign immunity is a legal question over which our review is plenary. *See Wippert v. Blackfeet Tribe* (1993), 260 Mont. 93, 859 P.2d 420.

## Discussion

¶11 Before proceeding with our discussion of the merits of the sovereign immunity issue, we must first address Thompsons' argument that the Tribe did not properly preserve this issue for appeal. Thompsons contend that this Court has no jurisdiction to decide this cause because the Tribe appealed only the trial court's denial of its cross motion for summary judgment (which did not address sovereign immunity) and did not appeal the court's prior denial of its motion to dismiss (which was premised on, among other things, the Tribe's immunity from suit). We conclude that Thompsons' argument is without merit.

¶12 Sovereign immunity is in the nature of a jurisdictional defense which may be considered by a court on its own motion or at the behest of a party. It is well-settled that defenses that go to a court's jurisdiction may be raised at any time by the parties or by the court, *sua sponte*. *Westlands Water Dist. v. Firebaugh Canal* (9th Cir. 1993), 10 F.3d 667, 673; *Wippert*, 260 Mont. at 102, 859 P.2d at 425; *Larrivee v. Morigeau* (1979), 184 Mont. 187, 191-92, 602 P.2d 563, 565-66; and Rule 12(h)(3), M.R.Civ.P. Jurisdictional defenses implicate the fundamental power and authority of the court to determine and hear an issue and, thus, transcend procedural considerations. Once a court determines that it lacks jurisdiction, then it can take no further action in the

case other than to dismiss it. *Wippert*, 260 Mont. at 102, 859 P.2d at 425 (citations omitted).

¶13 Despite that the Tribe's notice of appeal did not refer to the District Court's denial of its motion to dismiss, the sovereign immunity issue was not only raised in the trial court and determined there, but this issue has also been raised and briefed on appeal. Accordingly, this question having been raised and being purely one of law, it is not only proper, but necessary, that we address and resolve it.

¶14 Turning, then, to the merits of this issue, the District Court rejected the Tribe's claim of sovereign immunity on the basis that the Tribe's conduct was either "outside the scope of the Tribe's sovereignty" or "beyond their authority." Specifically, the court ruled that in filing its liens directly in the office of the county clerk and recorder, the Tribe engaged in conduct not authorized by Montana law. The case law, however, dictates our holding that the trial court erred in its rejection of the Tribe's sovereign immunity defense.

¶15 In *Anderson v. Engelke*, 1998 MT 24, ___ Mont. ___, 954 P.2d 1106, 55 St.Rep. 86, we quoted *Wilson v. Marchington* (9th Cir.1997), 127 F.3d 805, 813, which, in turn, quoted *Oliphant v. Suquamish Indian Tribe* (1978), 435 U.S. 191, 206, 98 S.Ct. 1011, 1020, 55 L.Ed.2d 209, for the proposition that "Indian law is uniquely federal in nature, having been drawn from the Constitution, treaties, legislation and an 'intricate web of judicially made Indian law.'" *Anderson*, ¶ 15. One such doctrine of Indian law firmly rooted in the federal jurisprudence is that, with few exceptions, Indian tribes retain sovereign immunity from suit in state courts. Subsequent to the completion of briefing in the case *sub judice*, the United States Supreme Court handed down another decision reaffirming its commitment to this legal principle.

¶16 In *Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.* (1998), ___ U.S. ___, 118 S.Ct.1700, ___L.Ed.2d ___, the non-Indian respondent corporation sued the Kiowa Tribe (Kiowa) in Oklahoma state court to obtain judgment on an unpaid promissory note executed by the Kiowa in favor of the corporation. While there was some dispute in the facts, it appears that the various courts accepted the respondent corporation's position that the note was executed and delivered off the reservation and that payments were to be made by the Kiowa off the reservation. The Kiowa moved to dismiss based on lack of subject matter jurisdiction, relying in part on its sovereign immunity from suit. The state appellate court affirmed the trial court in

ruling that the Kiowa were subject to suit in state court for breaches of contract involving off-reservation commercial conduct. The United States Supreme Court granted certiorari. *Kiowa Tribe*, 118 S.Ct. at 1702.

¶17 In reversing Oklahoma's courts, the Supreme Court reaffirmed its prior decisions holding that, as a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or where the tribe has waived sovereign immunity. In so ruling, the Court specifically rejected the respondent corporation's request that tribal immunity from suit be confined to transactions on the reservation and to tribal governmental activities. *Kiowa Tribe*, 118 S.Ct. at 1702-03 (citations omitted).

¶18 Specifically, the Court noted that its prior cases which sustained tribal immunity from suit had neither drawn distinctions based upon where the tribal activities occurred nor based upon distinctions between governmental activity versus commercial activity. While acknowledging that state substantive law may regulate tribal activities outside the reservation, the Court, nonetheless, noted that this "is not to say that a tribe no longer enjoys immunity from suit . . . [t]here is a difference between the right to demand compliance with state laws and the means available to enforce them." *Kiowa Tribe*, 118 S.Ct. at 1703 (citations omitted).

¶19 Moreover, the Supreme Court observed that since Indian tribes were not participants in the Constitutional Convention and were "thus not parties to the 'mutuality of . . . concession' that 'makes the States' surrender of immunity from suit by sister States plausible[,]'" tribal sovereign immunity from suit is not coextensive with state sovereign immunity and is not subject to diminution by the states. *Kiowa Tribe*, 118 S.Ct. at 1703 (citations omitted).

¶20 We conclude that *Kiowa Tribe,* and the precedent cited therein, controls the disposition of the sovereign immunity issue in the case at bar. First, we are not cited to any federal authority whereby Congress has extinguished tribal sovereign immunity from suit on the basis that the Tribe filed tribal tax liens off-reservation with a county recording officer. Second, there is nothing in the record of this case that would lead us to the conclusion that the Tribe waived its defense of sovereign immunity by engaging in this conduct. In point of fact, while an Indian tribe may waive sovereign immunity, an expression of waiver must be unequivocal; waiver will not be implied. *Santa Clara Pueblo v. Martinez* (1978), 436 U.S. 49, 58, 98 S.Ct. 1670,

1677, 56 L.Ed.2d 106. No such unequivocal expression of waiver of sovereign immunity is demonstrated here, even remotely. Third, the fact that the Tribe's action in filing its tax liens occurred off-reservation is of no consequence as regards its defense of sovereign immunity from suit. *Kiowa Tribe*, 118 S.Ct. at 1703. Finally, whether the Tribe's conduct was authorized by Montana law, as it contends, or unauthorized, as Thompsons argue and as the trial court ruled, is immaterial in the context of the Tribe's sovereign immunity defense. As the Supreme Court observed in *Kiowa Tribe*, "[t]here is a difference between the right to demand compliance with state laws and the means available to enforce them." *Kiowa Tribe*, 118 S.Ct. at 1703. Simply put, the Tribe's immunity from suit having not been congressionally abrogated nor unequivocally waived, the Tribe is immune from suit in state court and the District Court was without jurisdiction to entertain Thompsons' cause of action much less rule on the merits of their claims.

¶21 In reaching this conclusion, and in relying on *Kiowa Tribe* as the United States Supreme Court's most recent decision on the doctrine of tribal sovereign immunity, it nevertheless bears noting that our own jurisprudence is in accord. In *Wippert*, we held that sovereign immunity barred a declaratory judgment action in state court against the Blackfeet Tribe by ranchers who borrowed money from this tribe. *Wippert*, 260 Mont. at 108, 859 P.2d at 429. Citing federal precedent, this Court, as did the Supreme Court in *Kiowa Tribe*, acknowledged that "[w]ithout tribal consent or congressional authorization, an Indian tribe is exempt from suit . . . [and that] . . . [a] tribe may consent to suit only by an unequivocally express waiver of its sovereign immunity." *Wippert*, 260 Mont. at 104, 859 P.2d at 426. Accordingly, the legal principles set out in *Kiowa Tribe* are in no way a departure from the already-established law and precedent of this Court.

¶22 Nonetheless, Thompsons also argue that even if the Tribe is immune from suit, the Tribal officials named as defendants in their cause of action are not. Thompsons cite *Puyallup Tribe v. Washington Game Dep't* (1977), 433 U.S. 165, 97 S.Ct. 2616, 53 L.Ed.2d 667, and *Imperial Granite Co. v. Pala Band of Indians* (9th Cir 1991), 940 F.2d 1269, for the proposition that individual tribal officials may not share in the tribe's sovereign immunity from suit when such officials act beyond their authority. We do not read *Puyallup* as supporting this argument, however. *Puyallup* simply held that tribal sovereign immunity did not protect individual tribal members from state court process in connection with fishing activities conducted by such members off the reservation. *Puyallup*, 433 U.S. at 171-73. The Court did not address the

fundamentally different issue of the applicability of tribal sovereign immunity to persons acting as officials or agents of the tribe in their conduct of the tribe's business off the reservation.

¶23 As to *Imperial Granite*, the court did agree that tribal officials may lose their entitlement to the immunity of the sovereign when acting beyond their authority. *Imperial Granite*, 940 F.2d at 1271. Nonetheless, while this rule may apply when tribal officials exceed the scope of their representational capacity or delegated authority, the rule is different where a governmental employee commits a mistake that is arguably a mistake of fact or law when acting as the government's agent. *United States v. Yakima Tribal Court* (9th Cir. 1986), 806 F.2d 853, 859 (citations omitted). "Official action is still action of the sovereign, even if it is wrong, if it 'do[es] not conflict with the terms of [the officer's] valid statutory authority. . . .'" *Yakima Tribe*, 806 F.2d at 860 (quoting *Larson v. Domestic & Foreign Commerce Corp.* (1949), 337 U.S. 682, 695, 69 S.Ct. 1457, 1464, 93 L.Ed. 1628). Moreover, a governmental official's scope of authority "turns on whether the government official was empowered to do what he did; i.e., whether, even if he acted erroneously, it was within the scope of his delegated power." *Yakima Tribe*, 806 F.2d at 860 (quoting *Pennhurst State School & Hospital v. Halderman* (1984), 465 U.S. 89, 112 n.22, 104 S. Ct. 900, 914, n.22, 79 L.Ed.2d 67). Accordingly, when tribal officials act in their official capacity and within the scope of their authority they are immune, *Imperial Granite*, 940 F.2d at 1271 (citations omitted), even if they act in error, *Yakima Tribe*, 806 F.2d. at 860.

¶24 Here (and without deciding that the Tribal officials were or were not committing a mistake of fact or law or that they were or were not acting in error) there is nothing in the record that leads to a conclusion that the Tribal officials were acting outside their official capacities or that they were acting beyond the scope of their official duties and in excess of their powers under the CTTC. Again, in the context of tribal sovereign immunity, the issue is not whether Montana law permits or prohibits the filing of tribal tax liens directly with the county recording official, but rather whether the Tribe's officials were acting within the scope of their representational or delegated authority as agents of the Tribe in filing the Tribe's tax liens in accordance with Tribal law. Since they were acting in that capacity in this case, the Tribe's sovereign immunity insulates the Tribal officials from suit in state court to the same extent that the Tribe itself is immune.

¶25 Finally, without citation of authority, Thompsons suggest that since they were not seeking monetary damages in their suit against the Tribe, but were simply requesting cancellation of the Tribe's tax liens, sovereign immunity should not apply. We are unaware of any legal basis for this argument. Indeed, *Kiowa Tribe*, would appear to reject any such distinction in the same manner that the Supreme Court rejected distinctions based on off-reservation versus on-reservation conduct and based on governmental versus commercial activity. Moreover, in *Wippert*, we applied the doctrine of sovereign immunity in a case in which there was no money damage claim against the Blackfeet Tribe. Accordingly, we reject this argument, as well.

¶26 In summary, the doctrine of tribal sovereign immunity from suit bars Thompsons' state court action against the Tribe and against the Tribal officials in this case. The District Court was without jurisdiction to entertain Thompsons' cause of action or to rule on the merits of their claims. The court should have taken no action other than to dismiss Thompsons' complaint and first amended complaint. *Wippert*, 260 Mont. at 102, 859 P.2d at 425. We hold that the court erred as a matter of law in failing to do so.

¶27 Reversed and remanded for entry of an order of dismissal consistent with this opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART

/S/ KARLA M. GRAY

No