ROSEBUD SIOUX TRIBE, the United States for the use and benefit of the Rosebud Sioux Tribe; Plaintiff–Appellee;

v.

VAL–U CONSTRUCTION COMPANY OF SOUTH DAKOTA, INC.; Frederick L. Valandra; Defendants–Appellants;

Gary L. Harre; Eagle Surety, Inc.; Lou Baker; Woodlands Trust Company; Tammy Baker; Bradley E. Bagge; Defendants;

Ronald McDonald; Defendant–Appellant;

Yancey Lamar Anthony; Defendant.

No. 94–2083.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 16, 1994.

Decided March 16, 1995.

Rehearing Denied April 21, 1995.

William G. Taylor, Sioux Falls, SD, argued, for appellants.

Terry L. Pechota, of Rapid City, SD, argued, for appellee.

Before RICHARD S. ARNOLD, Chief Judge; HEANEY, Senior Circuit Judge; and BARNES,* District Judge.

HEANEY, Senior Circuit Judge.

Val–U Construction Company ("Val–U") appeals the dismissal of its counterclaims against the Rosebud Sioux Tribe ("the Tribe") arising out of a contract to build housing on the Rosebud Sioux Indian Reservation. We affirm the dismissal of Val–U's counterclaims sounding in tort, because we agree with the district court that the Tribe did not waive its sovereign immunity with respect to those causes of action. We reverse the dismissal of Val–U's breach of contract counterclaims because we find that the contract's arbitration clause operated as a waiver of the Tribe's immunity.

## BACKGROUND

In July 1989 Val–U Construction entered into a $3.6 million contract with the Tribe to build seventy-six housing units to serve a medical facility on the Rosebud Sioux Indian Reservation. Problems arose during the performance of the contract, and the Tribe terminated the contract in September 1990. The contract included an arbitration clause.

In October 1990 Val–U demanded arbitration of the contract termination. The Tribe refused to participate in the arbitration, citing sovereign immunity, and instead sued Val–U in April 1991 for breach of contract, presenting false payment vouchers, RICO violations, and fraud and misrepresentation. Val–U pleaded as an affirmative defense the contract's arbitration clause and, later, collateral estoppel based on the subsequent arbitration award in its favor. Val–U also counterclaimed for breach of contract, loss of the ability to compete, and loss of reputation. The district court neither compelled arbitration of the Tribe's claims nor stayed the arbitration of Val–U's claims against the Tribe.

The arbitration proceeded without the Tribe's participation. In June 1991 the arbitrator awarded Val–U $793,943.58 plus interest, fees, and costs after finding the Tribe had breached the contract.

In September the district court heard the Tribe's motion to dismiss, which it granted regarding Val–U's tort counterclaims but denied with respect to the contract counterclaims. In a September 15, 1991, decision the court reiterated that Val–U's counterclaims were not barred by sovereign immunity to the extent of recoupment, but it deferred ruling on sovereign immunity as it pertained to any recovery beyond recoupment. The court reasoned that, because the case had not yet been tried, it was impossible to tell whether any recovery by Val–U would exceed that of the Tribe and therefore go beyond the recoupment principle.

In the meantime, litigation continued by the Tribe to enforce performance and payment bonds backed by individual sureties. In July 1993 the district court found one of the sureties liable on the bonds in the amount of $3,633,165.

Thereafter the district court granted Val–U's motion to dismiss the Tribe's claims for RICO violations and for fraud and misrepresentation regarding the performance and payment bonds, but denied Val–U's motion to dismiss all the Tribe's claims as barred by collateral estoppel and to enter judgment for Val–U based on the arbitration award. The court ruled that the contract's arbitration clause was not enforceable because it was not an explicit waiver of sovereign immunity. Motions Hrg. Tr. (Sept. 27, 1993), at 23.

---

* The Honorable Harry F. Barnes, District Judge for the Western District of Arkansas, sitting by designation.

In February 1994 the Tribe moved for voluntary dismissal under Fed.R.Civ.P. 41(a)(2). The court granted the motion to dismiss without prejudice and dismissed Val–U's counterclaims as limited to recoupment. It delayed entry of judgment, however, until the conclusion of litigation concerning claims brought by several subcontractors under the Miller Act, 40 U.S.C. § 270a–d.

Upon conclusion of the trial on the Miller Act claims, the court entered judgment in the principal litigation dismissing the Tribe's lawsuit with prejudice and holding that Val–U's counterclaim was barred by sovereign immunity to the extent it sought recovery beyond recoupment. Any claim for recoupment, in turn, became moot upon dismissal of the Tribe's complaint. *Rosebud Sioux Tribe v. Val–U Construction Co.,* Civ. 91–3019, slip op. at 1 (D.S.D. Mar. 30, 1994) (order of dismissal). Val–U appeals the dismissal of its counterclaims against the Tribe.

## DISCUSSION

Val–U advances two arguments on appeal. First, Val–U contends that the Tribe waived its sovereign immunity via the contractual arbitration clause and by virtue of the "sue and be sued" clause in its corporate charter. Second, Val–U claims that, through the doctrine of collateral estoppel, it is entitled to summary judgment based on the arbitration award it obtained against the Tribe.

■ We first address the issue of whether the Tribe waived its sovereign immunity. The Tribe asserts that the arbitration clause is not a waiver of immunity and that the "sue and be sued" clause is irrelevant because the Tribe entered the contract with Val–U as a sovereign rather than a corporate entity. The district court concluded that the arbitration clause was not a clear waiver of immunity, but it did not address the "sue and be sued" clause in the Tribe's corporate charter. Motions Hrg. Tr. (Sept. 27, 1993), at 23. We review de novo the question of whether the Tribe waived its sovereign immunity. *General Electric Capital Corp. v. Grossman,* 991 F.2d 1376, 1380 (8th Cir.1993).

■ It is well established that Indian tribes possess the common law immunity from suit traditionally enjoyed by sovereign powers. *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978). A tribe may waive its immunity, but such waiver "cannot be implied but must be unequivocally expressed." *Id.* (internal quotation omitted). When a tribe brings a lawsuit, it does not waive immunity for counterclaims, *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe,* 498 U.S. 505, 509, 111 S.Ct. 905, 909, 112 L.Ed.2d 1112 (1991), except for matters asserted in recoupment, *Rosebud Sioux Tribe v. A & P Steel, Inc.,* 874 F.2d 550, 552 (8th Cir.1989). Recoupment is a defensive action that operates to diminish the plaintiff's recovery rather than to assert affirmative relief. *See Jicarilla Apache Tribe v. Andrus,* 687 F.2d 1324, 1344 (10th Cir.1982).

■ The first asserted waiver of immunity in this case is an arbitration clause which reads, "All questions of dispute under this Agreement shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association." We conclude that this clause is a clear expression that the Tribe has waived its immunity with respect to claims under the contract.

The language of this clause is spare but explicit that disputes under the contract "shall be decided by arbitration." The clause further specifies that the arbitration shall proceed in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. Rule 47(c) of those rules states, "Parties to these rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof." By designating arbitration in accordance with specified arbitration rules as the forum for dispute resolution, the parties clearly intended a waiver of sovereign immunity with respect to resolving disputes under the contract. By definition such disputes could not be resolved by arbitration if one party intended to assert sovereign immunity as a defense. *See Native Village of Eyak v. GC Contractors,* 658 P.2d 756, 760 (Alaska 1983).

We do not believe that the simplicity of the clause undermines its clarity or explicitness. In finding a waiver of immunity, we are mindful of the strong policy in support of tribal sovereignty and of the Supreme Court's prohibition of implied waivers of immunity. *See Santa Clara Pueblo,* 436 U.S. at 58–59, 98 S.Ct. at 1677. We note, however, that while the Supreme Court has expressed its protectiveness of tribal sovereign immunity by requiring that any waiver be explicit, it has never required the invocation of "magic words" stating that the tribe hereby waives its sovereign immunity.

This court recently found a waiver of a tribe's sovereign immunity in the language of a complaint the tribe had brought in federal court. In *Rupp v. Omaha Indian Tribe,* 45 F.3d 1241, 1244 (8th Cir.1995), the court found a waiver because the tribe "did not merely file a quiet title action" but "affirmatively requested the district court to order the defendants to assert any claims in the disputed lands." The court concluded that the tribe's explicit request that the defendants assert their claims was an unequivocal consent to such counterclaims. *Id.*

The *Rupp* opinion distinguished this court's holding in *American Indian Agric. Credit Consortium, Inc. v. Standing Rock Sioux Tribe,* 780 F.2d 1374, 1376 (8th Cir. 1985), in which the court found no waiver from language in a promissory note that provided various remedies in the event of default "in addition to such other and further rights and remedies provided by law," allowed for attorney's fees incurred in collection efforts, and stated that the law of the District of Columbia applied. The court stated that the tribe "did not explicitly consent to submit any dispute over repayment on the note to a particular forum, or to be bound by its judgment. To derive an express waiver of sovereign immunity from a promissory note that merely alludes to 'rights and remedies provided by law,' that provides for attorney fees in the event of a collection action, and that contains a choice of law provision, simply asks too much." *Id.* at 1380–81.

We too distinguish *Standing Rock.* Unlike that case, the parties here specifically designated an arbitral forum to settle disputes under the contract, as well as arbitration rules that explicitly provide for judicial enforcement of any arbitration award. The parties clearly manifested their intent to resolve disputes by arbitration, and the Tribe waived its immunity with respect to any disputes under the contract.

■ The waiver of immunity does not extend, however, to any tort claims by Val–U. The arbitration clause waives sovereign immunity only as to claims under the contract. Furthermore, we find that the "sue and be sued clause" in the Tribe's corporate charter does not operate as a general waiver of the Tribe's immunity from suit. *See, e.g., United Keetoowah Band of Cherokee Indians v. Oklahoma,* 927 F.2d 1170, 1174 (10th Cir. 1991) (formation of corporation does not affect tribe's power to act in governmental capacity). The record shows that the Tribe entered into the contract as a sovereign governmental entity. The construction contract was signed by the tribal chairman, and the Tribe oversaw the contract through the Tribal Council and the Medical Center Management Committee. There is no evidence that Val–U was dealing with a tribal corporate entity.

Having concluded that Val–U's breach of contract claims against the Tribe are not barred by sovereign immunity, we remand the case to the district court to hear Val–U's counterclaims and, in so doing, to determine the validity and effect of the arbitration award Val–U obtained against the Tribe in the amount of $793,943.58, plus interest, fees, and costs. Val–U urges us to enforce the award by ordering that judgment be entered in its favor in that amount. We conclude, however, that the proper course is for the district court to examine the arbitration proceeding to decide its effect. *See Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 223, 105 S.Ct. 1238, 1243–44, 84 L.Ed.2d 158 (1985).

Due to the diverse claims and parties involved in this case, Val–U's counterclaims against the Tribe have never been addressed by the district court despite the prolonged period of litigation. The court deferred any decision on the Tribe's sovereign immunity defense to the counterclaims until the litigation on the bonding and Miller Act issues was

completed. The Tribe recovered on the bond from one of the sureties, and subcontractors recovered judgments from the surety and from Val–U on the Miller Act claims. Having made itself whole, the Tribe requested voluntary dismissal of its claims against Val–U pursuant to Fed.R.Civ.P. 41(a)(2). The district court granted the request and, in turn, concluded that any recovery by Val–U on a recoupment theory disappeared upon dismissal of the Tribe's claims, and that sovereign immunity barred any recovery outside of recoupment. As we have removed the Tribe's immunity defense by finding a waiver, the district court now has jurisdiction over Val–U's counterclaims and must determine the validity and effect of the arbitration award on those counterclaims against the Tribe.

Accordingly, we affirm the dismissal of Val–U's tort counterclaims but reverse the dismissal of its breach of contract counterclaims against the Tribe. We remand this case to the district court to hear those counterclaims.