747 A.2d 837 (1999)
329 N.J. Super. 357
DANKA FUNDING COMPANY, LLC, Plaintiffs,
v.
SKY CITY CASINO, Defendants.
Superior Court of New Jersey, Law Division, Bergen County.
Decided September 21, 1999.
*838 Nicola G. Suglia, Audubon, Fleischer, Fleischer & Gerstein, Gibbsboro, appearing on behalf of plaintiffs Danka Funding Company, LLC.
Michael E. Quiat, Uscher, Quiat, Uscher & Russo, Hackensack, appearing on behalf of defendant Sky City Casino.
WALSH, J.S.C.
This matter is before the Court on a motion by Sky City Casino to dismiss the Complaint of Danka Funding Company, LLC ("Danka Funding") pursuant to R. 4:6-2 for lack of subject matter jurisdiction or, in the alternative, for summary judgment pursuant to R. 4:46-2. Because the court has considered the Affidavits, Certifications and documents filed by the litigants in arriving at its conclusions, the matter will be dealt with as a motion for summary judgment. For the reasons set forth below, the motion is granted.
The facts are not in dispute. Sky City Casino is a gaming casino operated on lands of the Pueblo of Acoma and is located at Reservation Exit 102, Interstate 40, Pueblo of Acoma, New Mexico. The Pueblo of Acoma is a federally recognized Indian tribe.[1] The tribe is the sole owner and operator of the Sky City Casino.
On December 31, 1997, Dennis Wanya, Sky City Casino's comptroller entered into two equipment leases for eight copying machines with Danka Funding's assignor, Danka Business Systems. The leases anticipated monthly payments of $3461.45 and $858.55, respectively, and were assigned to Danka Funding. None of the negotiations preceding the agreements took place in New Jersey and the leases themselves reflect that Danka Business Systems maintained an office in Albuquerque, New Mexico.
Sky City Casino made payments on these leases for approximately eight months. On September 18, 1998, however, attorneys for the casino advised Danka Funding that no further payments would be made and the company was asked to pick up the equipment. Two other letters from the casino's counsel dated November 2, 1998 and November 5, 1998 advised that if the equipment was not picked up by November 15, 1998 "the casino will arrange to have the equipment delivered" to Danka Business System's Albuquerque address.
Danka Funding declared Sky City Casino to be in default for failing to make its regular monthly payments and the future monthly payments were accelerated as permitted under the leases. Interest charges were also assessed. By the close of March 1999, Danka Funding claimed that Sky City Casino owed it $149,782.51.
This lawsuit was commenced on March 31, 1999. Counsel for Danka Funding sought substituted service noting that "[w]e have no information which would lead us to believe that .... [Sky City Casino] has any location or can be served by process in New Jersey. All of our credit records list the .... [Sky City Casino] with out-of-state addresses. There is no address listed in the State of New Jersey in the credit bureau records provided *839 to me by our client ." Substituted service was authorized by this court and copies of the Summons and Complaint were served by certified and regular mail on April 27, 1999.
On June 8, 1999, Sky City Casino moved to dismiss or, in the alternative, for summary judgment. The defendant claims that this court lacks subject matter jurisdiction because the Pueblo of Acoma has sovereign immunity under federal law. The defendant also claims that the court lacks personal jurisdiction over Sky City Casino or the Pueblo of Acoma since neither has the requisite minimum contacts with New Jersey.[2]
Indian tribes are "domestic dependent nations." United States v. Wheeler, 435 U.S. 313, 323, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978); Cherokee Nation v. Georgia, 30 U.S. (5 Pet.) 1, 17, 8 L.Ed. 25 (1831). These nations are under a protectorate relationship with the United States and their territories remain apart from the states in which they are located. See Santa Clara Pueblo v. Martinez, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978); Worcester v. Georgia, 31 U.S. (6 Pet.) 515, 560-561, 8 L.Ed. 483 (1832); see generally Timothy W. Joranko, Tribal Self-Determination Unfettered: Toward A Rule Of Absolute Tribal Official Immunity From Damages In Federal Court, 26 Ariz. St. L.J. 987 (1994). In 1940, the United States Supreme Court declared that immunity from suit was part of the retained sovereignty of Indian tribes. United States v. United States Fidelity & Guar. Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940). This aspect of tribal sovereignty has been repeatedly upheld and expanded over the past 59 years on the belief that tribal immunity is "necessary to preserve the autonomous political existence of tribes and to preserve tribal assets." Chemehuevi Indian Tribe v. California State Board of Equalization, 757 F.2d 1047, 1051 (9th Cir.1985). See generally Brian C. Lake, The Unlimited Sovereign Immunity of Indian Tribal Business Operating Outside The Reservation: An Idea Whose Time Has Gone, 1996 Colum. Bus. L.Rev. 87 (1996). These principles of immunity are equally applicable to subordinate organizations of the tribe such as the Sky City Casino. See In re Greene, 980 F.2d 590 (9th Cir.1992); S. Unique Ltd. v. Gila River Pima-Maricopa Indian Community, 138 Ariz. 378, 674 P.2d 1376 (1983); see generally William V. Vetter, Doing Business With Indians And The Three "S"es: Secretarial Approval, Sovereign Immunity, And Subject Matter Jurisdiction, 34 Ariz. L.Rev. 169 (1994).
Recently, the United States Supreme Court made it clear that an Indian tribe enjoys sovereign immunity from a civil suit based on breach of contract, whether the contract is entered into on or off tribal land. Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc., 523 U.S. 751, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998). Immunity from suit also exists whether the contract involves governmental or commercial activities engaged in by an Indian tribe. Kiowa Tribe, 523 U.S. at 754-55, 118 S.Ct. 1700.
In Kiowa Tribe, 523 U.S. at 756, 118 S.Ct. 1700, the Supreme Court recognized that tribal immunity as a judicial doctrine had "developed almost by accident." The Court also noted that "when tribes take part in the Nation's commerce ... immunity can harm those who are unaware that they are dealing with a tribe, who do not *840 know of tribal immunity, or who have no choice in the matter, as in the case of tort victims." Kiowa Tribe, 523 U.S. at 758, 118 S.Ct. 1700. Nevertheless, the Court reaffirmed the principle of broad sovereign immunity for Indian tribes observing that "Congress, subject to constitutional limitation, can alter its limits through explicit legislation." Id. at 759, 118 S.Ct. 1700.
Danka Funding appears to accept these general legal principles but argues that the Pueblo of Acoma has waived its immunity. The claimed waiver is based on the entry into the equipment leases by the Comptroller of the Sky City Casino in December of 1997. There appears to be no dispute that Sky City Casino entered into these leases with Danka Business Systems, a company with its principal place of business located in Florida.
The lease form used in both these transactions contains a so-called "forum selection clause." Danka Funding essentially admits that there were no negotiations over the forum selection clause. Paragraph 13 of the form lease provides:
CHOICE OF LAW: THIS LEASE AND EACH SCHEDULE SHALL BE GOVERNED BY THE INTERNAL LAWS FOR THE STATE IN WHICH OUR (OR OUR ASSIGNEES) LEASE PROCESSING CENTER IS LOCATED. YOU CONSENT TO THE JURISDICTION OF ANY LOCAL, STATE OR FEDERAL COURT LOCATED WITHIN SUCH STATE AND WAIVE ANY OBJECTION RELATING TO IMPROPER VENUE.
Paragraph 14 of the forum lease notifies the Sky City Casino that Danka Business Systems may assign these leases to third parties and advises Sky City Casino "that the assignee will have the same rights under the leases ...." In short, the form leases plainly indicate that the lessee is consenting to personal jurisdiction by some court should a dispute arise under the equipment leases.
Forum selection clauses are "prima facie valid" and such contractual provisions "should be enforced unless enforcement is shown by the resisting party to be `unreasonable' under the circumstances." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). Moreover, such provisions have been enforced by the United States Supreme Court against consumers under circumstances where there was no meaningful choice as to whether the clause would be included in their agreement. Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). There, the Supreme Court enforced a forum selection clause which required passengers on Carnival's cruises to litigate all disputes in Florida's courts. Carnival Cruise Lines, 499 U.S. at 587-588, 111 S.Ct. 1522. Recognizing that the plaintiffs were residents of the State of Washington and would have to litigate in a forum thousands of miles from their home, the Supreme Court, nevertheless, enforced the clause finding that such hardship would not satisfy the "heavy burden of proof" required to set it aside. Carnival Cruise Lines, 499 U.S. at 592, 111 S.Ct. 1522, quoting, M/S Bremen v. Zapata Off-Shore Co., 407 U.S. at 17, 92 S.Ct. 1907.
New Jersey courts, like their federal counterparts, have observed that forum selection clauses are prima facie valid and enforceable. See Caspi v. Microsoft Network L.L.C., 323 N.J.Super. 118, 732 A.2d 528 (App.Div.1999); McNeill v. Zoref, 297 N.J.Super. 213, 687 A.2d 1052 (App.Div. 1997).[3] Enforcement will be denied only when (1) the clause is a result of fraud or "overweening" bargaining power; (2) enforcement *841 would violate the strong public policy of New Jersey; or (3) enforcement would seriously inconvenience trial. Caspi v. Microsoft Network L.L.C., 323 N.J.Super. at 122, 732 A.2d 528; Wilfred MacDonald, Inc. v. Cushman Inc., 256 N.J.Super. 58, 63-64, 606 A.2d 407 (App. Div.1992).
In a recent case, the Appellate Division enforced a forum selection clause containing an agreement between an Internet Service Provider ("ISP") and a New Jersey customer which required that the customer agree to litigate all claims arising from the ISP agreement in the State of Washington. Caspi, 323 N.J.Super. at 124, 732 A.2d 528. The Appellate Division enforced the clause despite a claim that it deprived consumers of their protection under New Jersey's consumer fraud statute.[4]
But the fact that forum selection clauses are generally valid does not answer the question posed in this case. As a matter of federal law, an Indian tribe is subject to suit only when Congress has authorized it or when the tribe has waived its immunity. Thus the question presented is whether these forum selection clauses, even if generally enforceable, act to waive immunity here. The Tribal Secretary of the Pueblo Acoma has asserted that the Comptroller of the Sky City Casino, Dennis Wanya, did not have authority under tribal law to waive immunity. The United States Supreme Court has cautioned that "a waiver of sovereign immunity `cannot be implied but must be unequivocally expressed.'" Santa Clara Pueblo v. Martinez, 436 U.S. at 58, 98 S.Ct. 1670; quoting, United States v. Testan, 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). The requirement that the waiver be "clear" and "unequivocally expressed" is not something that may be flexibly applied or even disregarded based on the parties or the specific facts involved. Ute Distribution Corp. v. Ute Indian Tribe, 149 F.3d 1260, 1267 (10th Cir.1998). "In the absence of a clearly expressed waiver by either the tribe or Congress, the Supreme Court has refused to find a waiver of tribal immunity based on policy concerns, perceived inequities arising from the assertion of immunity, or the unique context of a case." Ute Distribution Corp., 149 F.3d at 1267.
The laws of the Pueblo of Acoma unmistakably indicate that the tribe intended to utilize its immunity to the maximum extent permitted:
1-6-1 Existence of Immunity
Except as expressly required by the laws of the United States, written laws of ACOMA Pueblo, or by a duly enacted resolution of the ACOMA Pueblo Tribal Council, ACOMA Pueblo Tribe shall be immune from suit for any action, and its officers, agents and employees shall be immune from suit for any action arising from performance of their official duties.
1-6-2 Interpretation of Waiver.
Any waiver of sovereign immunity by federal or tribal law must be expressly stated, and strictly interpreted.
PUEBLO OF ACOMA LAWS 1995, tit. 1 §§ 6-1, 6-2, Res. TC-Aug-28-96-3 (Supp. 1999).
The Pueblo of Acoma laws also explicitly state what procedures must be followed in order to waive its sovereign immunity:
1-4-4 Administrative Duties
The ACOMA Pueblo Tribal Council has the power to waive the sovereign immunity of the Pueblo of ACOMA or by resolution, to authorize the Governor or *842 his designate to waive the sovereign immunity of the Pueblo of ACOMA as limited in the resolution.[5]
PUEBLO OF ACOMA LAWS 1995, tit. 1 § 4-4, Res. TC-Aug-28-96-3 (Supp. 1999).
Danka Business Services knew it was dealing with an Indian tribe and is charged with knowledge that the tribe possessed sovereign immunity. The tribe, through its laws, describes how one may obtain a legally enforceable waiver of that immunity. Neither Danka Business Services nor Danka Funding took advantage of those provisions.
When the United States or New Jersey have been sued in New Jersey, our courts have observed that both sovereigns may determine what may be sued upon and the manner under which the suit may proceed. National State Bank v. Gonzalez, 266 N.J.Super. 614, 623-624, 630 A.2d 376 (App.Div.1993) (United States Sovereign Immunity); Cargulia v. Cargulia, 309 N.J.Super. 649, 660-661, 707 A.2d 1100 (Ch.Div.1996) (United States Sovereign Immunity); Chasin v. Montclair State University, 159 N.J. 418, 425, 732 A.2d 457 (1999) (New Jersey Tort Claims Act "reestablished general rule of immunities of public entities from liability for injuries to others") Bell v. Bell, 83 N.J. 417, 423, 416 A.2d 829 (1980). Further, any waiver of immunity must be "unequivocally expressed" and strictly construed. United States v. Mitchell, 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980); Soriano v. United States, 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957).
For example, in Santee Sioux Tribe of Nebraska v. Nebraska, 121 F.3d 427 (8th Cir.1997), an Indian tribe sued Nebraska and its Governor under the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 et seq. ("IGRA") and alleged that they had failed to conduct good faith negotiations with the tribe for the purposes of reaching a tribal-state compact for conducting gaming on the tribe's reservation. The state answered that the suit was barred by the Eleventh Amendment and filed a counterclaim which sought a declaration that operation of the tribe's casino violated the IGRA and an injunction prohibiting its operation. Shortly thereafter, the United States Supreme Court decided Seminole Tribe of Florida v. Florida, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) which determined that, absent a waiver, the IGRA not could confer federal court jurisdiction over a state. The district court in Santee then sua sponte dismissed the tribe's suit as well as Nebraska's counterclaim. Id. at 431.
The Indian tribe appealed claiming that Nebraska waived its immunity by enacting Neb.Rev.Stat. § 9-1,106 (Supp.1996) which required the Governor or his/her designee to conduct good faith negotiations with a tribe upon its request pursuant to the IGRA. The Indian tribe also argued that Nebraska waived its immunity by filing a counterclaim seeking declaratory and injunctive relief.
The Eighth Circuit found for Nebraska concluding that no waiver of immunity was made. Santee Sioux Tribe of Nebraska, 121 F.3d at 431. In reaching its decision, the circuit court specifically found that "the Nebraska assistant attorney general's conduct in answering the complaint and filing a counterclaim .... [did] not constitute a waiver of Nebraska's Eleventh Amendment immunity. While it is true that a state may waive Eleventh Amendment *843 immunity through its conduct, a state official may waive the state's immunity only where specifically authorized to do so by that state's constitution, statutes or decisions." Santee Sioux Tribe of Nebraska, 121 F.3d at 431 (citations omitted).
Certainly the principles governing the extent to which a sovereign may consent to suit also should be applicable to this tribe. By failing to avail themselves of the procedures for obtaining a waiver of immunity under tribal law, Danka Business Systems and Danka Funding failed to satisfy the conditions necessary for an unequivocal waiver identified in Santa Clara Pueblo v. Martinez, 436 U.S. at 58, 98 S.Ct. 1670.
Danka Funding claims that there is no need to obtain a waiver under tribal law because the language in the forum selection clause is plain enough. As the Court indicated earlier, however, the forum selection clause here is not as clear as Danka Funding would have us believe. No state forum is identified in the clause and, in fact, the forum might well shift during the course of contract performance depending on where the original lessor, or in the event of assignment its assignee, maintain their principal place(s) of business. In view of this State's public policy to read waivers of sovereign immunity narrowly and to require them to be unequivocal, the court believes that the forum selection clause here does not constitute a waiver of immunity. Cf. Kubis & Perszyk Associates Inc. v. Sun Microsystems, Inc., 146 N.J. 176, 680 A.2d 618 (1996) (Forum selection clause in franchise agreement not enforced as against public policy); Param Petroleum Corp. v. Commerce and Industry Ins. Co., 296 N.J.Super. 164, 686 A.2d 377 (App.Div.1997) (Forum selection clause in insurance contract not enforced as against public policy).
The court has not found any authority nor has any been cited by counsel to support a waiver of immunity based on a tribal member signing a contract containing a forum selection clause. The court, however, is aware that several courts have found a waiver of tribal immunity where an arbitration clause was contained in a disputed contract.[6] In Native Village of Eyak v. GC Contractors, 658 P.2d 756, 760 (Alaska 1983), the Alaska Supreme Court found that an Indian tribe had waived its immunity by agreeing to arbitrate "disputes and other matters in question between the Contractor and the [Indian tribe]." Id. at 758. The Seventh and Eighth Circuits, too, have found waivers of immunity where arbitration clauses were contained in contracts. Sokaogon Gaming Enterprise Corp. v. Tushie-Montgomery Associates, Inc., 86 F.3d 656 (7th Cir. 1996); Rosebud Sioux Tribe v. Val-U Construction Co. of South Dakota, Inc., 50 F.3d 560 (8th Cir.1995).[7]
*844 The Ninth Circuit, however, declined to find a waiver of sovereign immunity where an agreement containing an arbitration clause was entered into between an Indian tribe and a company constructing, financing and operating a bingo enterprise on the tribe's lands. Pan American Co. v. Sycuan Band of Mission Indians, 884 F.2d 416 (1989). The Ninth Circuit found that the mere inclusion of an arbitration clause did not constitute the type of unequivocal waiver demanded by the United States Supreme Court. Id. at 420. The circuit court specifically noted that a formal resolution expressly waving sovereign immunity was the type of waiver favored by the Supreme Court and specifically cited Merrion v. Jicarilla Apache Tribe, 617 F.2d 537, 540 (10th Cir.1980), aff'd, 455 U.S. 130, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982). Sycuan Band of Mission Indians 884 F.2d at 419.
Other courts, too, have declined to find a waiver of immunity where contractual provisions suggested that the parties intended that legal recourse would be available in the event disputes were to arise. In American Indian Agricultural Consortium, Inc. v. Standing Rock Sioux Tribe, 780 F.2d 1374, 1379 (8th Cir.1985), the court declined to find a waiver of immunity even when the tribe permitted the plaintiff by contract to reserve its rights and remedies as provided by law and the contact also contained clauses providing for attorneys fees and choice of law. The court found that these provisions were insufficient to represent an unequivocal waiver. See also Ramey Construction Co., Inc. v. Apache Tribe of the Mescalero Reservation, 673 F.2d 315 (10th Cir. 1982) (Consent to partial summary judgment on retainage claim was insufficient to constitute a waiver of sovereign immunity as to other matters).
In sum, Danka Funding and Danka Business Systems could have insured that they received a proper waiver of immunity by resort to tribal law. Instead, they now rely on a form lease with a forum selection clause to achieve that end. The court finds that under the circumstances of this case, the mere signature of the Comptroller of Sky City Casino, one of the tribes' subordinate organizations, on the equipment leases containing these clauses is insufficient to establish the unequivocal waiver necessary to extinguish the tribe's sovereign immunity. Accordingly, the Sky City Casino's motion for summary judgment is granted.
NOTES
[1] The Pueblo of Acoma is self governing with executive, legislative and judicial branches. PUEBLO OF ACOMA LAWS 1995 tit. 1, §§ 3-1, 4-1, 5-1 (Supp.1999). The executive branch is led by a Governor and the Acoma Pueblo Tribal Council serves as the tribe's legislature. PUEBLO OF ACOMA LAWS 1995 tit. 1, §§ 3-1 and 4-2 (Supp.1999).
[2] The Court finds that the Pueblo of Acoma has sovereign immunity which it has not waived and thus is entitled to summary judgment. Consequently, the Court will not address defendant's minimum contact arguments.

Sky City Casino also complains that the summons and complaint were not served in accordance with R. 4: 4-5(a)(2). The Court is satisfied that it provided sufficient information so that this Court could authorize substituted service. Such an Order was entered on April 5, 1999 and Sky City Casino appears to have been served with process in accordance with that Order.
[3] Danka Funding argues that their forum selection clauses permit it to loan money at favorable interest rates to prospective customers and this is in the public interest. While this may be the case, this policy argument in favor of enforcing forum selection clauses does little to establish the argument that the Indian tribe has waived its sovereign immunity.
[4] New Jersey courts have not addressed a forum selection clause such as this, which at the time of contracting makes it impossible to tell which forum is being agreed to. Since the clause permits the forum to change depending on whether the contracting party moves its business or assigns the contract to another, the clause might be found to be "overweening" at least in situations involving consumers. Further, in this instance, the forum selection clause appears to permit parties to be haled into a New Jersey court despite having no contacts with the forum at all or when the State has no connection with the underlying transaction. The Court, however, need not address these issues in this case.
[5] Like many tribes, the Pueblo of Acoma has a Business Board which is empowered to oversee all Pueblo-owned enterprises including the Sky City Casino. PUEBLO OF ACOMA LAWS 1995, tit. 1, §§ 10-1 and 10-3 (Supp.1999); Bylaws of Pueblo of Acoma Business Board Art. 1 § 1.01. The Bylaws of the Pueblo of Acoma Business Board make it plain that unless specifically authorized by the Tribal Council ... the Business Board may not:

(1) Enter into agreements of any kind on behalf of the Pueblo.
....
(5) Waive any other rights, privileges, or immunities of the Pueblo of Acoma.
Bylaws of Pueblo of Acoma Business Board, Art. II.
[6] In the court's view, there is a significant difference between the operation of a forum selection clause which acts to confer personal jurisdiction and an arbitration clause which deals with the subject matter of the dispute. An agreement to arbitrate places the subject matter of the dispute before an arbitrator rather than a court. Kalman Floor Co., Inc. v. Jos. L. Muscarelle, Inc., 196 N.J.Super. 16, 26, 481 A.2d 553 (App.Div.1984), aff'd, 98 N.J. 266, 486 A.2d 334 (1985). Arbitration agreements are strongly favored in this State and are enforced. United Services Auto. Ass'n v. Turck, 156 N.J. 480, 486, 721 A.2d 1 (1998).
[7] In Rosebud Sioux, 50 F.3d at 562, the Eighth Circuit found that the arbitration clause was "spare" but "explicit." Disputes arising under a contract between the tribe and a contractor building housing on the reservation "shall be decided by arbitration." Id. at 562. The circuit court found such an unequivocal statement in the agreement, was sufficient to establish a waiver. The Seventh Circuit also found an explicit waiver of immunity in Sokaogon Gaming Enterprise Corp. v. Tushie-Montgomery Associates, Inc., 86 F.3d 656 (7th Cir.1996). There the tribe and its casino subsidiary sought to raise sovereign immunity in a dispute with a construction company. The Seventh Circuit found that the construction contract contained an arbitration clause which specifically provided for arbitration and enforcement of any award in court. Judge Posner rejected the claim of sovereign immunity in the face of this clause observing:

There is nothing ambiguous about [this] language.
The tribe agrees to submit disputes arising under the contract to arbitration, to be bound by the arbitration award, and to have its submission and the award enforced in a court of law. To agree to be sued is to waive any immunity one might have from being sued.
Id. at 659. (Emphasis in original)
In both cases, however, there appears to be no dispute that the representatives of the tribe had the authority to waive immunity. Here, the Pueblo of Acoma denies that the casino's comptroller had the authority to waive immunity and this position is bolstered by tribal law.