No. 02-474

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 82

SARAH BRADLEY, Personal Representative for
the Estate of STEPHEN E. BRADLEY, d/b/a
Native American Indian Design,

        Plaintiff and Appellant,

    v.

CROW TRIBE OF INDIANS,

        Defendant and Respondent.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone, Cause No. DV 00-0980,
The Honorable Susan P. Watters, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Thomas E. Towe, Towe, Ball, Enright, Mackey & Sommerfeld, P.L.L.P.,
Billings, Montana

        For Respondent:

                Steven B. Bolstad, Keith A. Molyneaux, Elk River Law Office, P.L.L.P.,
Billings, Montana

Submitted on Briefs: February 6, 2003

Decided:   April 15, 2003

Filed:

_____
                Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1    The Plaintiff, Stephen Bradley, brought this action for breach of contract by the Defendant, Crow Tribe of Indians, in the District Court for the Thirteenth Judicial District in Yellowstone County. The District Court dismissed Bradley's complaint based on sovereign immunity. Bradley appeals from the District Court's order dismissing the complaint. We reverse and remand for further proceedings.

¶2    The issue on appeal is whether the District Court erred when it dismissed Bradley's claim based on its conclusion that the Tribe had not unequivocally waived its immunity from suit in state court.

FACTUAL AND PROCEDURAL BACKGROUND

¶3    In 1994, Stephen Bradley, a member of the Crow Tribe, assisted the Tribe in the formation of a corporation to develop a coal power plant and obtain federal funding for its construction. The Tribe passed Resolution No. 95-02 on October 8, 1994, which authorized the project and permitted the Chairperson of the Tribe and other designated officers to negotiate contracts on behalf of the power plant project. Bradley alleges that on or about November 15, 1994, he entered into a seven-year service contract with the Tribe, by which he agreed to provide consulting services and act as program director for the planning and construction of a power plant on tribal property and the Tribe agreed to pay him for his services. Bradley signed and submitted a copy of the contract drafted by him to the Tribe for signature. The written contract includes a provision that states:

> **11. MONTANA LAW AND VENUE**
> **The** parties agree that any action at law, suit in equity, or judicial proceeding for the enforcement of this **AGREEMENT** or any provision thereof shall be instituted only in the courts of the **STATE OF MONTANA**, and it is

2

mutually agreed that this **AGREEMENT** shall be governed by the laws of the **STATE OF MONTANA**, both as to interpretation and performance. [Emphasis in original.]

Clara Nomee, who was the Chairperson of the Tribe at that time, recalled signing the contract, but neither party has a copy of a contract signed by Nomee or any other authorized representative of the Tribe.

¶4     From 1994 until 2000, Bradley provided his consulting services for the Tribe.  In 1998, however, the Tribe became aware of impropriety by officials in the Tribal Government and, as a result of a criminal investigation, Nomee was convicted of embezzlement in federal court on September 16, 1998, and was removed from her position as Chairperson of the Tribe.  On July 8, 2000, the Tribe passed Resolution No. 2000-30, that addressed prior acts of Nomee's alleged misconduct, including her conduct involving the power plant project. The resolution concluded that Nomee:

> [O]perated in an improper, illegal, unethical manner, in violation of the laws of the Crow Tribe by using Resolution 90-35, which is unconstitutional on its face, when Nome[e] and her administration failed to comply with the provision contained in Resolution 90-35, requiring that all decisions made by Nomee or her administration between Tribal Council meetings, be ratified at the next Tribal Council meeting . . . .

Resolution 2000-30 declared that all decisions, contracts and agreements made by Nomee were thereafter voidable and on August 15, 2000, Clifford BirdinGround, then the Chairperson of the Crow Tribe, sent a Notice of Termination to Bradley, which stated:

> The Crow Tribe hereby provides thirty (30) day notice of its intention to terminate the consultant agreement entered into by yourself and the previous elected administration . . . .

¶5     On October 10, 2000, Bradley filed a complaint in District Court, alleging that the Tribe breached its contract with him and had failed to pay him as provided by contract.  On

3

December 19, 2000, the Tribe moved to dismiss the action on grounds that the District Court lacked personal and subject matter jurisdiction due to the Tribe's sovereign immunity. The District Court denied the Tribe's motion to dismiss on February 8, 2001, concluding that the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1604 to 1607, permitted Indian tribes to be sued in state and federal courts for causes of action arising from "commercial activities" carried on in the United States, and that the alleged contract provision was a waiver of the Tribe's sovereign immunity. However, the District Court reserved the right to readdress the issue of subject matter jurisdiction.

¶6 Following further discovery, neither party could locate or produce a copy of the written contract that was signed by an authorized representative of the Tribe.

¶7 On November 27, 2001, Bradley moved for summary judgment. In support of his motion, Bradley filed the sworn affidavit of Clara Nomee dated July 12, 2001. In the affidavit, she stated that she had signed a contract with Bradley to administer the power plant project. She recognized the written contract relied on by Bradley, and declared in her affidavit that:

> Although I have no specific recollection of exactly when I signed this document, I am quite certain I did sign it. I would recall any reason for not doing so, and there were none. Further, I do know that under a federal grant program if a contract was not signed, we were not allowed to disburse funds. Failure to have a signed contract would have been called to my attention immediately by the accountants, and there was no such communication.

Also submitted in support of the motion was an affidavit by Bradley in which he claimed the existence of a contractual relationship between him and the Tribe.

¶8 The Tribe failed to timely respond to Bradley's motion, and the District Court granted Bradley's motion on February 5, 2002, and entered judgment on February 15, 2002.

4

¶9	On March 12, 2002, the Tribe moved to alter or amend the judgment of the District Court pursuant to Rule 59(g), M.R.Civ.P., and in the alternative, to set aside the judgment pursuant to Rule 60(b), M.R.Civ.P. The Tribe contended that its prior counsel had failed to notify the Tribe of the existing matter or the motions pending before the District Court and, as a result, the Tribe had not filed a timely brief in opposition to summary judgment. The Tribe also argued that the District Court should consider the Tribe's motion because it addressed sovereign immunity and whether the District Court had the subject matter jurisdiction to enforce the terms of the alleged contract.

¶10	The District Court ordered a hearing on the matter for April 18, 2002. The parties did not dispute that there was some contractual relationship between Bradley and the Tribe, but argued that there was no formal written contract signed by the Tribe that waived their immunity from suit in state court, and that there was a dispute as to whether the alleged written contract contained the actual terms of Bradley's contract with the Tribe. However, no evidence was submitted which controverted Nomee's or Bradley's affidavits. The District Court found that there was an express agreement which had been partially performed and that it included a waiver of tribal immunity from suit in state court. However, the District Court concluded that because a signed copy of the agreement had not been produced, it was not sufficient to overcome the presumption against waiver of immunity and dismissed the action for lack of jurisdiction.

### STANDARD OF REVIEW

¶11	"[A] court's determination of a motion to dismiss based on a claim of sovereign immunity is a legal question over which our review is plenary." *Thompson v. Crow Tribe*

*of Indians*, 1998 MT 161, ¶ 10, 289 Mont. 358, ¶ 10, 962 P.2d 577, ¶ 10 (citation omitted). A determination by a district court that it lacks subject matter jurisdiction is a conclusion of law that we will review for correctness. *General Constructors v. Chewculator, Inc.*, 2001 MT 54, ¶ 16, 304 Mont. 319, ¶ 16, 21 P.3d 604, ¶ 16.

¶12    "When deciding a motion to dismiss based on lack of subject matter jurisdiction, a trial court must determine whether the complaint states facts that, if true, would vest the court with subject matter jurisdiction." *General Constructors*, ¶ 16 (citing *Liberty v. State Fund*, 1998 MT 169, ¶ 7, 289 Mont. 475, ¶ 7, 962 P.2d 1167, ¶ 7). A motion to dismiss "should be construed in a light most favorable to the non-moving party and should not be granted unless it appears beyond a doubt that the non-moving party can prove no set of facts in support of its claim which would entitle it to relief." *General Constructors*, ¶ 17 (citation omitted).

### DISCUSSION

¶13    Did the District Court err when it dismissed Bradley's claim based on its conclusion that the Tribe had not unequivocally waived its immunity from suit in state court?

¶14    The District Court recognized the contractual relationship between Bradley and the Tribe; however, it concluded that because it was a contract for employment for more than one year, the Statute of Frauds, found at § 28-2-903(1), MCA, is applicable. The District Court then concluded that Bradley's performance of the contract would normally create an exception to the applicability of the Statute of Frauds pursuant to the court's "equitable powers," but concluded that in this case to exercise those powers would circumvent the

6

Tribe's sovereign immunity and be contrary to federal law. Specifically, the District Court stated:

> Federal case law does not support this Court using its equitable powers under Montana law to (1) lift the Agreement out of the Statute of Frauds thereby making it a valid contract pursuant to Montana law, and in turn (2) using that valid contract under Montana law to establish a clear waiver of tribal immunity under federal constitutional case law.

¶15 Bradley contends that his allegations and evidence show that the Tribe did waive its sovereign immunity and that the District Court erred by denying him the opportunity to present additional evidence and testimony on the issue of waiver, especially considering that the Tribe presented no contradictory evidence or affidavits.

¶16 The Tribe contends that Bradley had the burden of proving unequivocal waiver and that because he was unable to produce a signed contract, there was insufficient direct evidence to prove that the Tribe consented to waive its sovereign immunity. Without a signed written waiver, the Tribe contends that the District Court could, at best, find an implied waiver, which is insufficient to avoid the Tribe's sovereign immunity. Furthermore, the Tribe contends that Nomee's and Bradley's affidavits lack credibility, and that Nomee's affidavit failed to "affirmatively and unequivocally state that she signed the contract." Finally, the Tribe contends that the District Court correctly dismissed the complaint because the validity and the terms of the contract should be litigated in tribal court.

¶17 We begin our analysis by recognizing that Indian tribes generally enjoy common-law immunity from suit, although this right is subject to the control of Congress. *Wippert v. Blackfeet Tribe* (1993), 260 Mont. 93, 104, 859 P.2d 420, 426; *Santa Clara Pueblo v. Martinez* (1978), 436 U.S. 49, 58, 98 S.Ct. 1670, 1677. In addition, we recognize that the

7

sovereign immunity of Indian tribes "is a matter of federal law and is not subject to diminution by the States." *Kiowa Tribe of Okla. v. Manufacturing Technologies, Inc.* (1998), 523 U.S. 751, 756, 118 S.Ct. 1700, 1703, 140 L.Ed.2d 981. We have previously acknowledged, however, that Indian tribes may waive their right to sovereign immunity and consent to suit in state courts. *Wippert*, 260 Mont. at 104, 859 P.2d at 426 (citing *Santa Clara Pueblo*, 436 U.S. at 58, 98 S.Ct. at 1677). Any waiver of sovereign immunity, however, "cannot be implied but must be unequivocally expressed." *United States v. King* (1969), 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52; *see Thompson*, ¶ 20; *see also C & L Enterprises, Inc. v. Citizen Band Potawatomi Tribe of Okla.* (2001), 532 U.S. 411, 418, 121 S.Ct. 1589, 1594, 149 L.Ed.2d 623 ("A tribe's waiver must be 'clear'"). "There is a strong presumption against waiver of tribal sovereign immunity." *DeMontiney v. U.S. ex rel. Dept. of Interior* (9th Cir. 2001), 255 F.3d 801, 811 (citing *Pan American Co. v. Sycuan Band of Mission Indians* (9th Cir. 1989), 884 F.2d 416, 419).

¶18 Although neither this Court nor the United States Supreme Court have specifically addressed the procedural requirements that a district court should follow when determining whether an Indian tribe has waived its sovereign immunity, we find several decisions in the federal circuits to be persuasive and adopt the following guidelines. The D.C. Circuit Court of Appeals held that where a motion to dismiss is based on a claim of sovereign immunity, "the court must engage in sufficient pretrial factual and legal determinations to 'satisfy itself of its authority to hear the case' before trial." *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan* (D.C. Cir. 1997), 115 F.3d 1020, 1027-28 (quoting *Prakash v. American University* (D.C. Cir. 1984), 727 F.2d 1174, 1179); *see also Foremost-McKesson v. Islamic Republic*

8

*of Iran* (D.C. Cir. 1990), 905 F.2d 438, 449 (where foreign sovereign immunity was asserted, "more than the usual is required of trial courts in making pretrial factual and legal determinations"). In *Prakash*, the D.C. Circuit Court of Appeals stated:

> When subject-matter jurisdiction is questioned, the court must, of course, satisfy itself of its authority to hear the case, and in so doing, it may resolve factual disputes. The court has considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction, and normally it may rely upon either written or oral evidence. The court must, however, afford the nonmoving party "an ample opportunity to secure and present evidence relevant to the existence of jurisdiction."

*Prakash*, 727 F.2d at 1179-80 (quoting *Gordon v. National Youth Work Alliance* (D.C. Cir. 1982), 675 F.2d 356, 363) (other citations omitted); *see also Local 336, American Fed. of Musicians, AFL-CIO v. Bonatz* (3rd Cir. 1973), 475 F.2d 433, 437 ("[W]e have never departed from the rule that even on such an issue the record must clearly establish that after jurisdiction was challenged the plaintiff had an opportunity to present facts by affidavit or by deposition, or in an evidentiary hearing, in support of his jurisdictional contention"). With respect to the plaintiff's burden in these proceedings, the Second Circuit Court of Appeals stated that the plaintiff must prove by a preponderance of evidence that jurisdiction exists. *See Garcia v. Akwesasne Housing Authority* (2nd Cir. 2001), 268 F.3d 76, 84 (rule applies when an Indian tribe claims sovereign immunity); *Makarova v. U.S.* (2nd Cir. 2000), 201 F.3d 110, 113 (rule applies when the United States claims sovereign immunity).

¶19    In this case, Bradley contends that the District Court erred by concluding that an equitable exception to the Statute of Frauds could not overcome sovereign immunity. We agree that the District Court employed an incorrect analysis. While tribal immunity is a federal rule of law–the waiver of which must be unequivocally expressed, the Statute of

9

Frauds is a state rule of law. Partial performance is an equitable exception to that state rule of law. *See Hayes v. Hartelius* (1985), 215 Mont. 391, 396-97, 697 P.2d 1349, 1353. It is a method of proving unequivocal waiver. It is not an exception to the immunity itself.

¶20    Montana's Statute of Frauds, § 28-2-903(1), MCA, is a statute that limits the enforceability of certain contracts: it is *not* a statute that affects a district court's subject matter jurisdiction. Other jurisdictions have reached a similar conclusion. *See Chambers v. Industrial Com'n* (Ill. 1989), 547 N.E.2d 470, 471 ("[T]he statute of frauds merely sets forth a writing requirement for certain classes of contracts. It cannot confer subject-matter jurisdiction"); *see also Holley Equipment Co. v. Credit Alliance Corp.* (11th Cir. 1987), 821 F.2d 1531, 1535 (The Eleventh Circuit Court of Appeals concluded that a district court erroneously dismissed a case for a lack of subject matter jurisdiction where the dismissal was based upon a defendant's successful affirmative defense that Alabama's Statute of Frauds, Ala.Code § 7-2-201, precluded recovery on an alleged contract). The District Court need not consider Montana's Statute of Frauds when determining whether it has subject matter jurisdiction; nor does it need to invoke its "equitable powers" to find jurisdiction.

¶21    Nor is the Tribe correct when it contends that because a signed copy of the contract has not been produced, the waiver can only be implied and is not unequivocal. Whether the waiver is unequivocal, depends on the language of the contract itself–in this case Paragraph 11–which the District Court correctly concluded was sufficient to waive jurisdictional objections. Whether or not the contract was signed simply relates to whether Paragraph 11 had been agreed upon. That fact was also subject to proof by direct testimony or affidavit

from parties authorized to execute the contract–in this case Clara Nomee and Stephen Bradley.

¶22    In this case, it is apparent that because of its erroneous reliance on the Statute of Frauds and its equitable powers, the District Court failed to address the only factual consideration that was essential to a determination of whether the Tribe "clearly" and "unequivocally" waived its sovereign immunity. Bradley's complaint alleged sufficient facts that, if true, would vest the District Court with subject matter jurisdiction. *See General Constructors*, ¶ 16; *Liberty*, ¶ 7. Bradley provided a copy of the alleged written contract between the parties, alleged that Nomee signed it as an authorized representative, and Nomee signed an affidavit testifying to that effect. The Tribe disputes the credibility of Bradley and Nomee, and whether the alleged written contract contained the actual contractual terms between Bradley and the Tribe. However, the Tribe produced no evidence to refute the affidavits of the authorized signatories of the contract. Nor did it provide any other contract pursuant to which Bradley could have been performing for the previous six years. Nomee's affidavit was not equivocal. In reference to the contract she stated: "I am quite certain I did sign it." Had the Tribe controverted either of the affiants or offered direct evidence to contradict their recollections of the agreement we would remand for resolution of that limited factual issue. However, because there is, in the present posture of the case, no factual issue to resolve, we conclude that the undisputed evidence establishes that a contact between Stephen Bradley and the Crow Tribe, which included the unequivocal waiver of sovereign immunity found at paragraph 11, was proven. Therefore, we reverse the District

11

Court's order which dismissed Bradley's complaint for lack of jurisdiction and remand to the District Court for further proceedings.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JIM RICE

Justice James C. Nelson dissenting.

¶23     I dissent.  While I generally agree with the Court's holding, but not its reasoning, that the District Court's contract analysis is in error, I strongly disagree with the Court's conclusion at ¶ 21 that the District Court properly decided Paragraph 11 of the Bradley/Crow Tribe contract "was sufficient to waive jurisdictional objections."  Indeed, because the contract was not a sufficient waiver of tribal immunity, I would affirm the District Court for reaching the correct result, albeit for the wrong reason.

¶24     There are two fundamental issues of jurisdiction present in this case, tribal sovereign immunity from suit and tribal court jurisdiction versus state court jurisdiction.  Because proper subject matter jurisdiction can be raised at any time and can be raised *sua sponte* by this Court, these jurisdictional issues should be raised and addressed by this Court. *Thompson v. Crow Tribe of Indians*, 1998 MT 161, ¶ 12, 289 Mont. 358, ¶ 12, 962 P.2d 577, ¶ 12 (holding tribe immune from suit).  By virtue of its decision reversing the District Court

13

on a contract analysis alone, the majority opinion fails to properly address either of these issues.

**A. Tribal Sovereign Immunity**

¶25 First, I do not believe that the possibility of a valid contract compels reversal of the District Court. Even assuming a valid, binding agreement was formed between Bradley and the Crow Tribe (Tribe), I do not agree with the District Court's conclusion that the Tribe unequivocally waived its immunity from suit by virtue of Paragraph 11 of that same contract.

¶26 Further, although Bradley asserts in his reply brief that the Tribe has not raised the issue of a proper interpretation of Paragraph 11 of the contract by disputing the trial court's conclusion, as mentioned above, this Court has already determined that tribal sovereign immunity is a jurisdictional question which may be raised at any time and may be raised by this Court. Further, this Court's rule regarding preservation of arguments for appeal is based on whether the trial court was given an opportunity to consider the issue. In this case, the trial court twice directly considered whether Paragraph 11 of the contract between Bradley and the Tribe constituted waiver of tribal immunity. *See* Order Denying Motion to Dismiss, p.4-5 (Feb. 8, 2001), and Order and Memorandum Setting Aside Judgment and Dismissing Complaint for Lack of Subject Matter Jurisdiction, p.7 (June 10, 2002). Therefore, this Court is free to and should address the issue that the contract here does not constitute waiver. To that issue I now turn.

¶27 As the Court correctly notes, the rule is well established that tribes retain sovereign immunity from suit unless that immunity is unequivocally waived by Congress or by a tribe. *C & L Enters. v. Citizen Band Potawatomi Indian Tribe* (2001), 532 U.S. 411, 418, 121 S.Ct.

14

1589, 1594, 149 L.Ed.2d 623. In other words, unlike the United States or the State of Montana, no broad based waiver of tribal immunity has ever been enacted. *Compare* Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680; Administrative Procedure Act, 5 U.S.C. §§ 701-706; Art. II, Sec. 18, Mont. Const. Therefore, any case presenting the issue of tribal immunity starts with the presumption that the tribe has immunity. From that presumption, a court must address whether that immunity has been waived.

¶28 In the case of relinquishment of immunity by contract, the waiver must be clear. *C & L Enters.*, 532 U.S. at 418, 121 S.Ct. at 1594. Most cases addressing waiver of sovereign immunity by contract also involve either an interpretation of applicable federal law, an interpretation of tribal constitution, code, or charter, or address the agent authority of the signatory to the contract. *See, e.g., Wippert v. Blackfeet Tribe* (1993), 260 Mont. 93, 104, 859 P.2d 420, 426-27 (addressing immunity in the context of the tribe's corporate charter). However, some cases also address the issue of whether standard contract language that does not mention sovereign immunity nonetheless constitutes waiver.

¶29 Recently, the United States Supreme Court addressed a conflict among courts regarding waiver based on contract language. *C & L Enters.,* 532 U.S. at 418, 121 S.Ct. at 1594. In *C & L Enters.*, the Court addressed a standard form construction contract for installation of a foam roof on a building. The Court held that an arbitration clause coupled with a choice of law clause constituted clear waiver because the tribe in that case agreed to adhere to specific dispute resolution procedures according to the American Arbitration Association rules. The Court also pointed out that the tribe agreed to judicial enforcement of an arbitration judgment by those rules. Further, the Court specifically noted that its

15

decision was based in part on the fact that the tribe in that case prepared and tendered the contract. Therefore, because federal law governs the issue of tribal immunity from suit, *C & L Enters.* establishes baseline contract provisions which unequivocally constitute waiver of sovereign immunity by a tribe.

¶30 In this case, Paragraph 11 of the parties' contract reads:

> **11. MONTANA LAW AND VENUE**
> **The** parties agree that any action at law, suit in equity, or judicial proceeding for the enforcement of this **AGREEMENT** or any provision thereof shall be instituted only in the courts of the **STATE OF MONTANA**, and it is mutually agreed that this **AGREEMENT** shall be governed by the laws of the **STATE OF MONTANA**, both as to interpretation and performance. [Emphasis in original.]

This case then presents the question of whether something less, something substantially less, than the arbitration language in *C & L Enters.* constitutes waiver.

¶31 The District Court concluded that *C & L Enters.* requires that Paragraph 11 must be considered an unequivocal waiver. I conclude that the District Court erred in its interpretation of *C & L Enters.* as a matter of law because the court simply did not address the differences between the contract in *C & L Enters.* and the contract in this case. This point is crucial because of the presumption that sovereign immunity is not waived.

¶32 After comparing the contract at issue with the provisions at issue in *C & L Enters.*, I conclude that the Bradley/Crow Tribe contract cannot be considered a clear waiver of tribal sovereign immunity. First, unlike the contract in *C & L Enters.*, the contract at issue here does not contain an arbitration provision; it only has a forum and choice of law clause. Therefore, unlike *C & L Enters.*, the Tribe in this case did not agree to adhere to specific

16

dispute resolution procedures. Further, unlike *C & L Enters.*, the Tribe in this case did not agree to procedures for enforcement of judgment.

¶33 In addition, Bradley drafted the contract at issue here, not the Tribe. It is a standard form contract intended to apply to any of Bradley's clients, as is evident from its title: "Standard Agreement for Consulting Services." Accordingly, our interpretation of any ambiguity in the contract is to be construed against Bradley, not against the Tribe. Therefore, unlike *C & L Enters.*, the fact that Bradley drafted and tendered the contract rather than the Tribe removes any inference that the Tribe intended to waive immunity by offering the contract.

¶34 Finally, the District Court cited a number of cases in support of its conclusion that Paragraph 11 constituted clear waiver. However, all the cases cited by the court in which a tribe was a party involved a contract which included an arbitration clause, similar to the situation in *C & L Enters.* Further, although the court cited cases that involved contracts with choice of law provisions, none of these cases dealt with tribes or tribal sovereign immunity. Rather, these cases each deal with foreign sovereigns and countries under the provisions of the Foreign Sovereign Immunities Act, which does not apply to tribes. Further, after reviewing the cases involving Indian tribes, it appears that a choice of law provision is simply insufficient to waive tribal immunity. *See, e.g., Danka Funding Co. v. Sky City Casino* (N.J. Super. Ct. Law Div. 1999), 747 A.2d 837, 843 (holding forum and choice of law provision insufficient to waive tribal immunity and stating: "The court has not found any authority nor has any been cited by counsel to support a waiver of immunity based on a tribal member signing a contract containing a forum selection clause . . . [unlike] a

17

waiver of tribal immunity where an arbitration clause was contained in a disputed contract.");

*American Indian Agric. Credit Consortium, Inc. v. Standing Rock Sioux Tribe*, 780 F.2d 1374, 1376 (8th Cir. 1985) (promissory note with choice of law provision and provision for attorney fees held insufficient to constitute waiver of tribal immunity).

¶35    To hold that waiver is "clear" from a contract such as the one here is to substantially eliminate the concept of tribal sovereign immunity by giving effect to any standard form contract with a choice of law provision.  I cannot agree that such a common standard form provision in a contract that is not prepared by a tribe should override sovereign immunity. Therefore, I would hold that the District Court erred in concluding that the contract at issue here constitutes a waiver of tribal sovereign immunity.

**B. Tribal Court Jurisdiction Versus State Court Jurisdiction**

¶36    Next, I am disturbed that a case such as this is even being litigated in the state court system.

¶37    Tribal court versus federal court versus state court jurisdiction is one of the most challenging Indian law issues facing the courts today.  However, one thing is clear: tribal courts have jurisdiction over tribal members conducting business on tribal land with other tribal members.  *See* CONFERENCE OF WESTERN ATTORNEYS GENERAL, AMERICAN INDIAN LAW DESKBOOK, 135-37, n.82, 90 (1993) (discussing tribal, federal, and state jurisdiction). *See also Kennerly v. District Court of Ninth Judicial Dist.* (1971), 400 U.S. 423, 429, 91 S.Ct. 480, 483, 27 L.Ed.2d 507, 511 (noting that, absent an act by Congress, a tribe has exclusive jurisdiction over debt collection action arising out of a transaction on the reservation between a non-Indian creditor and an Indian defendant); *National Farmers Union*

18

*Ins. Cos. v. Crow Tribe of Indians* (1985), 471 U.S. 845, 855-56, 105 S.Ct. 2447, 2453-54, 85 L.Ed.2d 818 (In civil matters "the existence and extent of a tribal court's jurisdiction will require a careful examination of tribal sovereignty, the extent to which that sovereignty has been altered, divested, or diminished, as well as a detailed study of relevant statutes, Executive Branch policy as embodied in treaties and elsewhere, and administrative or judicial decisions.").

¶38     Further, we have previously adhered to jurisdictional rules that require this Court to refrain from obstructing tribal court jurisdiction when "the exercise of state jurisdiction would interfere with reservation self-government." *General Constructors, Inc. v. Chewculator, Inc.*, 2001 MT 54, ¶¶ 23-25, 304 Mont. 319, ¶¶ 23-25, 21 P.3d 604, ¶¶ 23-25. In addition, we have stated: "Absent the clearest evidence of the Tribes' intent to consent to the assertion of authority by state courts onto their sovereign land, the Tribes retain their exclusive jurisdiction." *Balyeat Law, P.C. v. Pettit*, 1998 MT 252, ¶ 25, 291 Mont. 196, ¶ 25, 967 P.2d 398, ¶ 25. *See also Agri West v. Koyama Farms, Inc.* (1997), 281 Mont. 167, 173, 933 P.2d 808, 812 (Montana applies the doctrine of abstention, as a matter of comity).

¶39     In this case, as already discussed above, the contract itself does not constitute clear evidence of the Tribe's consent to the assertion of authority by Montana's courts. Further, this case falls squarely within tribal court jurisdiction: Bradley is a tribal member, the contract is with the Tribe, and the contract involves business on tribal land with the Tribe itself. In addition, the dispute involves a contract with the Tribe itself regarding a grant from the United States government to facilitate energy development by the Tribe. *See* Affidavit of Stephen E. Bradley ("Sometime in 1985, I proposed to the Crow Tribe that the Crow Tribe

19

ought to construct a power plant which could utilize the abundant coal supply owned by the Crow Tribe on the Crow Reservation.").

¶40     I cannot imagine a more straightforward issue of tribal self government.  Therefore, again, I would affirm the District Court and allow resolution of this matter to be handled where resolution is most appropriate: in the Crow Tribal Court.

/S/ JAMES C. NELSON


Chief Justice Karla M. Gray and Justice Jim Regnier join in the foregoing dissent.

/S/ KARLA M. GRAY
/S/ JIM REGNIER